PUBLISH

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

--------------------------------------------

### No. 97-6076

--------------------------------------------

**District Court No. CV 95-N-2798-S**

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
08/24/98
THOMAS  K. KAHN
CLERK

PATRICIA A. JONES,

Plaintiff-Appellant,

versus

BESSEMER CARRAWAY MEDICAL CENTER,

Defendant-Appellee.

------------------------------------------------------------------

Appeal from the United States District Court
for the Northern District of Alabama

------------------------------------------------------------------

(August 24, 1998)

ON PETITION FOR REHEARING

Before EDMONDSON and HULL, Circuit Judges, and CLARK, Senior Circuit Judge.

PER CURIAM:

This case is before us on plaintiff-appellant's motion for rehearing. The motion is denied, except that we strike altogether part B. of our opinion of 27 March 1998 (137 F.3d 21306). We replace the stricken portion of our opinion with a new part B., conclusion, and appendix:

B. Statements by Smith

Plaintiff also argues the district court erred by excluding racial statements allegedly made by Smith;[10] Plaintiff cites

---

[10]Plaintiff specifically contends that Smith has said: (1) "You black girls make me sick, sometimes I feel like just hitting you in the head"; (2) "You black girls get away with everything"; and (3) "You black girls make me sick." Plaintiff–correctly– admits that none of the statements is direct evidence of discrimination for her dismissal.

**Jones**, 874 F.2d at 1540; and **Elrod v. Sears Roebuck & Co.**, 939 F.2d 1466, 1469 n.2 (11th Cir. 1991).

We will assume that the district court was mistaken to exclude this evidence. And, we also <u>assume</u> for the sake of argument that a plaintiff might be able to establish, by circumstantial evidence, a prima facie case even in the absence of showing that a similarly situated, nonminority employee has not been dismissed. But even with these assumptions, the statements by Smith are not enough in this case to establish the prima facie case: one still cannot infer it is more likely than not that her termination was based on an illegal discriminatory criterion.

For discrimination cases, the distinction between direct and circumstantial evidence is important to preserve.[11]

---

[11]**Direct evidence is evidence which, if believed, proves the existence of the fact in issue without inference or presumption. So, direct evidence of discrimination is powerful evidence capable of making out a prima facie case essentially by itself. This court has marked severe limits for**

Smith's statements do not amount to direct evidence of discriminatory conduct. Plaintiff agrees. And as circumstantial evidence, the statements are not enough to establish a prima facie case. Although the district court held a hearing before excluding the statements in advance of the trial, the record as it was developed tells us little about the statements, their timing, context and so on. But we do know

---

the kind of language to be treated as direct evidence of discrimination. See, e.g., Evans v. McClain of Georgia, Inc., 131 F.3d 957, 962 (11th Cir. 1997); Burrell v. Board of Trustees of Georgia Military College, 125 F.3d 1390, 1393-94 n.7 (11th Cir. 1997); Earley v. Champion Int'l Corp., 907 F.2d 1077, 1082 (11th Cir. 1990). To give great weight -- for example, to say a few isolated words "make all the difference" -- to language that is, at best, only circumstantial evidence blurs the important distinction between circumstantial evidence and direct evidence for prima facie cases. Blurring this distinction adds hurtful uncertainty to the law.

Language not amounting to direct evidence, but showing some racial animus, may be significant evidence of pretext once a plaintiff has set out the prima facie case. See Smith v. Horner, 839 F.2d 1530, 1536-37 (11th Cir. 1988); see also E.E.O.C. v. Our Lady of the Resurrection Medical Ctr., 77 F.3d 145, 149 (7th Cir. 1996); Woody v. St. Clair Comm., 885 F.2d 1557, 1560 (11th Cir. 1989).

they were not associated with the events of the day leading to Plaintiff's discharge.[12]

In addition, nothing in the record shows Smith, on the pertinent day, did more than orally report an incident to Carlin. No evidence shows that Smith had failed, in the past, to report to Carlin (or to another supervisor) employee misconduct that was similar to Plaintiff's conduct. Nothing shows that Smith coaxed Carlin to take disciplinary action of any kind, much less recommended that Carlin refer Plaintiff to the personnel committee to be discharged.

No evidence suggests Carlin had reason to believe that Smith was an unreliable reporter. But Carlin did not just rely on Smith.

Carlin intervened. She met personally with Plaintiff on the pertinent day. Carlin with her own eyes saw Plaintiff still

---

[12]The most favorable (from Plaintiff's viewpoint) parts of what was offered by Plaintiff about the statements are included in the Appendix to this opinion.

5

out of uniform.  Carlin had her own conversation with Plaintiff that was entirely consistent (including Plaintiff's disobedience to Carlin's own instruction to put on a uniform) with Smith's report.[13]

Nothing in the record shows that Carlin's decision to refer Plaintiff's case to the personnel committee was anything but Carlin's independent decision following Carlin's own meeting with Plaintiff.  In addition, the final decision to terminate Plaintiff's employment was not Smith's decision and was not Carlin's decision, but was the decision of the personnel committee.[14]  Furthermore, no evidence in this record even intimates that the personnel committee had a

---

[13]The reason Plaintiff showed up for work wearing the red jogging suit was that she faced immediate dismissal if she was late one more time.

[14]Depending upon the circumstances of a case, evidence of discriminatory intent of persons other than the final decisionmaker may be important in some employment discrimination litigation.  We are simply setting out the circumstances of this case.

history of racial discrimination in its decisions. Nor is there evidence that Carlin had a history of racial statements or of racial discrimination in her decisions. In fact, even for Smith -- who had worked at the hospital for fourteen years -- there is no evidence that Smith's concrete decisions, as a supervisor, had historically demonstrated racial discrimination. Given the circumstances, Smith's statements -- remote from the main events -- cannot establish a prima facie case of discriminatory discipline.

## Conclusion

In this disciplinary discharge case, no direct evidence of discrimination was submitted at trial. No statistical evidence was presented. No evidence shows that, after Plaintiff was fired, she was replaced by a nonminority employee. No pattern-or-practice of discrimination was evidenced or attempted to be

evidenced.   And, most important, no similarly situated, nonminority employee was identified who was treated better than Plaintiff.[15]

Plaintiff failed to establish a prima facie case. Judgment as a matter of law for Defendant was appropriate.

AFFIRMED.[16]

---

[15]We therefore put aside cases that may have one or more of these kinds of evidence, and we decide nothing about cases that do have one or more of them.

[16]We also note that Plaintiff cannot avoid this result simply by disputing whether Smith (or Carlin) actually instructed her to change into scrubs. There may have been a misunderstanding.  Smith may have been mistaken or lied. Carlin may have been mistaken or lied. But federal courts do not sit to review the accuracy of the employer's fact findings or of the employer's decision to terminate a plaintiff's employment.  See Nix, 738 F.2d at 1187 ("Title VII is not a shield against harsh treatment at the workplace. . . .  The employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." (internal quotes and citations omitted)).    The true reasons for Plaintiff's termination would be important only to the extent that they might demonstrate that the reasons stated by the employer were pretextual. See Russell v. Acme-Evans Co., 51 F.3d 64, 68 (7th Cir. 1995) ("Pretext . . . means a lie,

## Appendix

While Plaintiff never made a formal proffer, Plaintiff and Defense counsel did discuss the statements during the pretrial hearing on Defendant's motion in limine to exclude the statements allegedly made by Smith. The applicable portions of the pretrial hearing transcript contain these words:

---

specifically a phony reason for some action."). But, because we conclude that Plaintiff "failed to present a prima facie case of discrimination, [we] need not examine [Defendant's] articulated reasons for discharging [her], nor determine whether [those] reasons were merely a pretext for discrimination. . . ." Hawkins v. Ceco Corp., 883 F.2d 977, 985 (11th Cir. 1989).

9

THE COURT:  All right.  You've got another motion with regard to the comments allegedly made by Charlene Smith.

****

THE COURT: When were these comments allegedly made?

MR. WIGGINS [Plaintiff's Counsel]: Your Honor, the Plaintiff testified –

THE COURT:  Excuse me, I'm  – Mr. Duffie has the floor.

MR. WIGGINS: I'm sorry, I thought you were addressing me, Your Honor.

MR.  DUFFIE [Defendant's Counsel]: It's a little confused from her testimony.  One thing she [Plaintiff] does say is that one of these comments were made, I think it was the first one, "You black girls make me sick.  Sometimes I feel like just hitting you in the head," she did specifically allege that that comment was made, I believe, a week before her discharge.

The other one she testified, I believe at one point, that Ms. Smith used to make these comments once a week; and then at one point, once a year.  So, it's a little confusing on the others.

THE COURT: Now you may respond, Mr. Wiggins.

MR. WIGGINS: I have no response to that, Your Honor.  I'm in agreement.

[Court grants motion.]

10

The testimony referred to at the hearing was deposition testimony. Although it does not appear that Plaintiff's deposition was presented to the district court during the pretrial hearing on Defendant's motion in limine, the deposition was before us as part of the record on appeal. Plaintiff's deposition provides the following information about the allegedly racial statements:

Q. And how often did you hear these comments?
A. [Plaintiff]    Maybe about once a week.
Q. Who made the comment "You black girls make me sick"?
A. Ms. Smith made those comments sometimes.

Q. When did Ms. Smith make this comment?
A. I don't know the exact time. I don't know the exact time. It was just like maybe once a week or something, you know.
Q. So once a week Ms. Smith would say, "You black girls make me sick"?
A. I don't know if it was once a week. Possibly.
Q. I don't want you to guess.
A. I don't know.
Q. Was it possibly once a year?
A. I don't know.
****

Q. Okay. Well, when did it happen in relation to your termination?

A. About a week, possibly about a week before my termination.

****

Q. Did she direct the comment at you or someone else?

A. I thought it was directed at me. . . .

****

Q. You gave me a couple of phrases that you said allegedly were uttered at work. Was Ms. Smith the one who said all of these comments about black girls?

A. Yes, ma'am.

Q. So it was only Ms. Smith?

A. Yes, ma'am, as far as I can remember.

Q. She said, "you black girls make me sick"?

A. Yes.

Q. In January of 1995?


A. She said that "You black girls make me sick. Sometimes I feel like just hitting you in the head."

Q. Oh, so that was all in one phrase?

A. That particular time. Now, sometimes they were separate.

Q. Who else was she talking to? She said "girls"?

A. I'm sure she was – well, I can't speculate. All I can do is say that that was what was told to me.

Q. Who told you that?

A. Ms. Smith.

Q. Ms. Smith told you "You black girls make me sick. You make me want to hit you in the head"?

A. Yes, ma'am.

Q. And that was a week before your termination?

A. About a week.

Q. Who said, "You black girls get away with everything"?

A. Ms. Smith.

Q. When did she say that?

A. I don't know the exact day.

**Q.** What year?

**A.** That would be – I'm not sure what date that was.


The Motion for Rehearing is DENIED.


FOR THE COURT:


/S/ J.L. EDMONDSON
UNITED STATES CIRCUIT JUDGE