PUBLISH

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

------------------------------------------

No. 97-6076

---------------------------------------------
D. C. Docket No. CV 95-N-2798-S

PATRICIA A. JONES,

Plaintiff-Appellant,

versus

BESSEMER CARRAWAY MEDICAL CENTER,

Defendant-Appellee.

-----------------------------------------------------------------

Appeal from the United States District Court
for the Northern District of Alabama

-----------------------------------------------------------------

(March 27, 1998)

Before EDMONDSON and HULL, Circuit Judges, and CLARK, Senior Circuit Judge.

**EDMONDSON, Circuit Judge:**

Patricia Jones ("Plaintiff") brought suit against Bessemer Carraway Medical Center ("Defendant") under Title VII alleging that she was discriminatorily discharged. The district court granted Defendant's motion for judgment as a matter of law after determining that Plaintiff failed to establish a prima facie case of discrimination. We affirm the judgment.

### Background

Plaintiff -- a black woman -- was hired by Defendant in 1987 as a Licensed Practical Nurse on its medical-surgical floor. Plaintiff was responsible for general patient care. During the pertinent period, she worked on the 3:00 to 11:00 p.m. shift and was required to be at work by 2:30 p.m. to take "report" (receive patient information). Plaintiff was also required to wear a white

2

uniform or a "scrub suit" ("scrubs") while performing her nursing duties.[1]

One day in 1995, Plaintiff clocked into work at 2:32 p.m. while wearing a red jogging suit. She stated that she clocked in out-of-uniform to avoid being late and receiving another tardy under Defendant's attendance policy.[2] She admitted that one more tardy would have been grounds for her dismissal given her poor attendance record.

After clocking into work, Plaintiff went to take report wearing her red jogging suit. She then asked the Head Nurse,

---

[1]No one disputes that street clothes were not permitted to be worn during work on Plaintiff's floor. Other areas of the medical center had different requirements and policies about these issues. So, discipline for conduct in those areas is not necessarily relevant to the situation at issue here.

[2]Defendant had an attendance policy so that employees could be terminated if they incurred ten "occurrences" of absenteeism within a rolling 12-month period. An absence from work counted as one occurrence; a tardy counted as one-half an occurrence. But, the attendance policy permitted Plaintiff to arrive by 2:37 p.m. without being considered "tardy."

Charlene Smith ("Smith"), who is a white woman, whether she could leave during her lunch break to go home and to lock her front door. Smith denied this request and claims that she, seeing Plaintiff was out-of-uniform, told Plaintiff to put on scrubs immediately.[3] But, instead of going to put on scrubs, Plaintiff went to ask another supervisor, Shirley Rollan ("Rollan"), for permission to leave during the shift. Plaintiff says she intended to change into scrubs after she talked with Rollan.

After Smith's discussion with Plaintiff, Smith went to the Assistant Administrator of Nursing, Joyce Carlin ("Carlin") -- a white woman, who is Smith's supervisor -- to report the incident. Smith told Carlin that Plaintiff came to work out-of-uniform and that she did not change into scrubs when instructed. Carlin then had Plaintiff -- who, after talking with

---

[3]Plaintiff contests that Smith gave her this instruction.

4

Rollan, was still wearing her red jogging suit -- come to her office to discuss the situation.

Plaintiff told Carlin that she had clocked into work out-of-uniform. Plaintiff also repeatedly requested that she be able to leave during her shift to lock up her house; Carlin denied the requests because of staffing concerns. Carlin also claims that she instructed Plaintiff to change into scrubs but that Plaintiff would not do it.[4] At that point, Carlin asked Plaintiff to clock out and to leave work -- around 2:50. Carlin did not investigate the situation further.

The personnel committee met the following week to discuss the incident and, after discussing it with Carlin, decided to terminate Plaintiff. Two reasons were given for Plaintiff's dismissal: (1) failure to the follow the instructions of

---

[4]Plaintiff contests that Carlin gave her this instruction.

5

Smith, which constituted insubordination;[5] and (2) being unprepared for work.

Plaintiff filed suit against Defendant claiming she was discriminatorily discharged on the basis of race in violation of Title VII. At trial, Plaintiff sought to introduce evidence that nonminority employees were treated more favorably for similar conduct and that Smith's acts were motivated by racial animus. The district court, however, excluded the evidence. And, at the close of Plaintiff's case, the district court concluded that Plaintiff had failed to establish a prima facie case of discrimination under Title VII and granted Defendant's motion for judgment as a matter of law. Plaintiff appeals.

## Discussion

---

[5]While Carlin claims that Plaintiff did not follow her instruction (in addition to Smith's instruction), disobedience to Carlin was not given as a reason for Plaintiff's dismissal.

This court reviews a district court's grant of judgment as a matter of law de novo and applies the same standards utilized by the district court. Richardson v. Leeds Police Dep't, 71 F.3d 801, 805 (11th Cir. 1995). A judgment as a matter of law should be granted if, upon considering all the evidence in the light most favorable to the nonmoving party, "reasonable people in the exercise of impartial judgment could not arrive at a contrary [decision]." Isenbergh v. Knight-Ridder Newspaper Sales, Inc., 97 F.3d 436, 439 (11th Cir. 1996). "The court may not weigh the evidence or decide the credibility of witnesses . . . . The nonmoving party must provide more than a mere scintilla of evidence to survive a motion for judgment as a matter of law; 'there must be a substantial conflict in evidence to support a jury question.'" Id. (quoting Carter v. City of Miami, 870 F.2d 578, 581 (11th Cir. 1989)) (internal citations omitted).

## I. Prima Facie Case of Discrimination under Title VII

Plaintiff contends that the district court erred by excluding evidence and by concluding that she failed to establish a prima facie case of discrimination. Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may establish a prima facie case of discrimination by circumstantial evidence of discriminatory intent, see McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973); Holifield v. Reno, 115 F.3d 1555, 1561-62 (11th Cir. 1997).

In this case, Plaintiff attempted to prove discrimination with circumstantial evidence, using the familiar McDonnell Douglas/Burdine three-step burden shifting framework. Under this framework, a plaintiff carries the initial "burden of

establishing a prima facie case of racial discrimination." McDonnell Douglas, 411 U.S. at 802. Then, if a prima facie case is shown, the defendant must "articulate some legitimate, nondiscriminatory reason for the [adverse employment action]." Id. If this is done, then the plaintiff may attempt to show that the proffered reason was merely a pretext for the defendant's acts. See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Id. The issue in this case is whether the district court properly concluded that Plaintiff did not establish her prima facie case.

Plaintiff in this case tried to show a prima facie case of a discriminatory discharge by proving these things: (1) the plaintiff belongs to a racial minority; (2) she was subjected to adverse job action; (3) her employer treated similarly situated employees of other races more favorably; and (4) she was qualified to do the

job.  See Holifield, 115 F.3d at 1562; see also McDonnell Douglas, 411 U.S. at 802.  "Demonstrating a prima facie case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination."  Holifield, 115 F.3d at 1562 (citations omitted).  The chief question on appeal is whether Plaintiff has satisfied the third element: the like-to-like issue.[6]

---

[6]On the prima facie case, Plaintiff has called our attention to these words in Jones v. Gerwens, 874 F.2d 1534 (11th Cir. 1989):

> [W]e hold that, in cases involving alleged racial bias in the application of discipline for violation of work rules, the plaintiff, in addition to being a member of a protected class, must show either (a) that he did not violate the work rule, or (b) that he engaged in misconduct similar to that of a person outside the protected class, and that the disciplinary measures enforced against him were more severe than those enforced against the other persons who engaged in similar misconduct.

Jones, 874 F.2d at 1540.

Considering the facts in Jones, our impression is that words about "did not violate the work rule" are unnecessary to the decision in Jones and are dicta; but we will discuss them.  The pertinent words in Jones demand not two, but three, elements: (1) the plaintiff is a member of a protected class; (2) the plaintiff has engaged -- either (a) disputedly or (b) admittedly -- in misconduct similar to persons outside the protected class; and (3) that similarly situated, nonminority employees (that is, persons outside the protected class)

10

## A. Similarly Situated Employees

Plaintiff first contends that the district court erred by excluding evidence of similarly situated, nonminority employees who were treated more favorably than she was. Evidentiary rulings by the district court are reviewed for abuse of discretion. See Walker v. NationsBank, 53 F.3d 1548, 1554 (11th Cir. 1995).

Evidence of similarly situated employees must be used to support Plaintiff's prima facie case. This aspect of Plaintiff's case is satisfied if:

> [T]he plaintiff [shows] that [she] and the employees are similarly situated in all relevant respects. . . . [cites omitted]. In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways.

received more favorable treatment.

We stress that, under the Jones formulation, no plaintiff can make out a prima facie case by showing just that she belongs to a protected class and that she did not violate her employer's work rule. The plaintiff must also point to someone similarly situated (but outside the protected class) who disputed a violation of the rule and who was, in fact, treated better.

<u>Holifield</u>, 115 F.3d at 1562.  The most important factors "'in the disciplinary context . . . are the nature of the offenses committed and the nature of the punishments imposed.'"  <u>Jones v. Gerwens</u>, 874 F.2d 1534, 1539-40 (11th Cir. 1989) (quoting <u>Moore v. City of Charlotte</u>, 754 F.2d 1100, 1105 (4th Cir. 1985)); <u>see</u> <u>Holifield</u>, 115 F.3d at 1562; <u>see</u> <u>also</u> <u>Wilmington v. J.I. Case Co.</u>, 793 F.2d 909, 916 (8th Cir. 1986); <u>Nix v. WLCY Radio/Rahall Communications</u>, 738 F.2d 1181, 1185 (11th Cir. 1984).  If  Plaintiff fails to identify similarly situated, nonminority employees who were treated more favorably, her case must fail because the burden is on her to establish her prima facie case.  <u>See</u> <u>McDonnell Douglas</u>, 411 U.S. at 802; <u>Jones</u>, 874 F.2d at 1541.  Here, Plaintiff has failed to satisfy that burden.

Plaintiff first offers evidence that Smith and Beth Nettles ("Nettles") -- white women -- requested days off and, after their requests were denied, took the days off nonetheless.  Plaintiff asserts that this behavior constitutes insubordination for which

they were not terminated.  The record, however, indicates that incidents of this kind were not treated or disciplined by Defendant as insubordination but were handled as "occurrences" under and violations of Defendant's attendance policy.  Plaintiff stresses that Carlin testified that Carlin considered the pertinent conduct -- taking a day off after being denied permission to take the day off -- to be a degree of insubordination.  But, Carlin also made it clear that this conduct happened all the time and that Defendant consistently treated these incidents as violations of the attendance policy and gave the employee an "occurrence" under that policy.  No evidence indicates that Defendant ever treated this kind of violation as insubordination.

We have written that "Title VII does not take away an employer's right to interpret its rules as it chooses, and to make determinations as it sees fit under those rules."  Nix, 738 F.2d at 1187.  Here, Defendant was entitled to conclude that taking a day off after a request for the day off is denied is not insubordination

13

under its rules, but instead, is an attendance violation. Nothing is wrong with this practice as long as the practice is followed in a nondiscriminatory manner (and no evidence shows discriminatory application -- whites and blacks treated differently -- of the practice). Thus, Plaintiff's use of Smith and Nettles as comparators is unwarranted.[7]

---

[7]We also note that Smith's and Nettles's day-off violations were several years distant from Plaintiff's acts; and, at the time of their incidents (1988 and 1985, respectively), they were under supervisors different from Plaintiff's supervisor. Such a difference may be sufficient to prevent them from being considered "similarly situated" with Plaintiff. See Jones, 874 F.2d at 1541 ("Courts have held that disciplinary measures undertaken by different supervisors may not be comparable for purposes of Title VII analysis."); Cooper v. City of North Olmstead, 795 F.2d 1265, 1271 (6th Cir. 1986) ("Although a change in managers is not a defense to claims of race or sex discrimination, it can suggest a basis other than race or sex for the difference in treatment received by two employees."). Different supervisors may have different management styles that -- while not determinative -- could account for the disparate disciplinary treatment that employees experience. See Tate v. Weyerhaeuser Co., 723 F.2d 598, 605-06 (8th Cir. 1983) (stating that evidence that one manager may be more lenient than another may explain the differential treatment that employees receive on a basis other than race). Plaintiff, however, cites us to no evidence sufficient to compare the respective management styles of Smith's and Nettles's supervisors with that of Jones's supervisor.

Plaintiff also points to evidence of medication errors by Smith, Nettles, and Beverly Clark ("Clark") -- all white women -- that did not result in dismissal. She claims that these are incidents of similarly situated employees because, like insubordination, Defendant classifies medication errors as Group A violations, that is, violations that could result in termination.

The record indicates that medication errors are not always, in fact, Group A violations. Instead, Plaintiff has only shown that the errors <u>could</u> be considered Group A violations depending on the medication at issue. As a result, Plaintiff's sweeping classification is unfounded. Also, despite Plaintiff's contentions, it is insufficient to characterize conduct as "similar" for Title VII analysis simply because it may result in the same or similar punishment. As we wrote in <u>Jones</u>, one of the most important factors in determining similarity is the "nature of the offenses committed." <u>Jones</u>, 874 F.2d at 1539; <u>see</u> <u>also</u> <u>Holifield</u>, 115 F.3d at 1562. And, medication errors, in fact, simply involve too many

15

variables that preclude their use as comparators with incidents of insubordination.[8]  In the context of this case, Plaintiff's argument is based on a level of generality that is too high for use in defining the concept of "similar." We cannot endorse comparisons that are this ill-defined.

Plaintiff also claims that Clark was a similarly situated employee because she frequently was unprepared for work -- she would have curlers in her hair and put makeup on during report -- and had a pretty poor tardiness record.[9]  This claim, however,

---

[8]For example, medication errors may include: (1) giving the wrong medication altogether; (2) giving the wrong amount of medication; (3) giving medication at the wrong time; or (4) not giving medication at all.  Also, medication errors may involve issues of professional judgment, which are not generally relevant in incidents of insubordination.  In addition, that these incidents may have occurred at different times and under different supervisors lessens their comparability.  See Jones, 874 F.2d at 1541.

If Defendant had fired Plaintiff for medication errors, then we would be more willing -- despite these variables -- to permit evidence of other employees' medication errors because the nature of the offenses would be more similar.  But, that set of facts is not the case here; Plaintiff was not dismissed for medication errors.

[9]Plaintiff also claims that Clark came to work while wearing street

ignores that Plaintiff was not terminated only because she was unprepared; instead, she was terminated for being unprepared <u>and</u> insubordinate, in the light of an already deficient employment record.  No evidence shows that Clark was insubordinate or was accused of being insubordinate in conjunction with her unpreparedness.  Plaintiff's multiple instances of misconduct on the same day may simply have been "the straw that broke the camel's back."  <u>Rohde v. K.O. Steel Castings, Inc.</u>, 649 F.2d 317, 322 (5th Cir. 1981).  Again, Plaintiff cites us to no evidence that Smith, Nettles, or Clark was ever in a similar situation; thus, they are not proper comparators.  Plaintiff has failed to demonstrate that the other employees -- Smith, Nettles, and Clark

---

clothes.  But, employees -- including Plaintiff -- were permitted to come to this workplace in street clothes as long as they changed into scrubs before the shift began.  Here, Plaintiff provides no evidence that Clark -- unlike Plaintiff -- was "clocked in" while in street clothes, much less that she declined to comply speedily with a supervisor's direction to change into uniform.  As a result, evidence that Clark came to work in street clothes is not sufficient to make her a comparator for Plaintiff.

17

-- were similarly situated for purposes of Title VII analysis.  The district court did not err by excluding the evidence and by concluding, as a matter of law, that Plaintiff failed to meet her burden of establishing a prima facie case.

B.    Statements by Smith

Plaintiff also argues that the district court erred by excluding racial statements allegedly made by Smith;[10] Plaintiff cites Jones, 874 F.2d at 1540; and Elrod v. Sears Roebuck & Co., 939 F.2d 1466, 1469 n.2 (11th Cir. 1991).  But even if we assume that the district court was mistaken to exclude this evidence, we nonetheless

_____

[10]Plaintiff specifically contends that Smith said: (1) "You black girls make me sick, sometimes I feel like just hitting you in the head"; (2) "You black girls get away with everything"; and (3) "You black girls make me sick."  Plaintiff -- correctly -- never argues that the statements are direct evidence of discrimination for her dismissal.  Plaintiff's case is one based on circumstantial evidence.

No evidence shows that Smith had failed, in the past, to report to Carlin (or to another supervisor) employee misconduct that was truly similar to Plaintiff's conduct.

conclude that the statements -- even if considered -- do not establish the missing element of Plaintiff's prima facie case of discrimination.

For Plaintiff's prima facie case of disparate treatment under Title VII, she must show -- as a threshold matter under the circumstantial evidence framework -- that nonminority, similarly situated employees were treated more favorably: an improper effect. See Holifield, 115 F.3d at 1562. It is this showing -- and not the demonstration of racial animus alone -- that addresses the fundamental issue in a Title VII disparate treatment case: "'whether the defendant intentionally discriminated against the plaintiff.'" Nix, 738 F.2d at 1184 (quoting United States Postal Serv. Bd. of Governors v. Aikens, 103 S.Ct. 1478, 1481-82 (1983)) (emphasis added).

Alleged racial animus of a supervisor does not alleviate the need to satisfy the elements of a prima facie case, although statements showing some racial animus may be significant

evidence of pretext once a plaintiff has set out the prima facie case. See Smith v. Horner, 839 F.2d 1530, 1536-37 (11th Cir. 1988) (under circumstantial evidence framework, statements may be used to show pretext); see also E.E.O.C. v. Our Lady of the Resurrection Medical Ctr., 77 F.3d 145, 149 (7th Cir. 1996); Woody v. St. Clair County Comm'n, 885 F.2d 1557, 1560 (11th Cir. 1989); McAdoo v. Toll, 615 F.Supp. 1309, 1314 (D. Md. 1985).

Whatever Smith's racial attitudes may be, Plaintiff has failed to present sufficient evidence that nonminority, similarly situated employees were treated more favorably by her employer than she was treated; so, Plaintiff did not establish a prima facie case of discrimination under Title VII. The district court's grant of judgment as a matter of law is affirmed.[11]

---

[11]We also note that Plaintiff cannot avoid this result simply by disputing whether Smith actually instructed her to change into scrubs. A dispute over the reasons for Plaintiff's termination is important only to the extent that it might demonstrate that the reasons stated by the employer were pretextual. See Russell v. Acme-Evans Co., 51 F.3d 64, 68 (7th Cir. 1995) ("Pretext . . . means a lie, specifically a phony reason for some action."). But, because we

**AFFIRMED.**

_____

conclude that Plaintiff "failed to present a prima facie case of discrimination, [we] need not examine [Defendant's] articulated reasons for discharging [her], nor determine whether [those] reasons were merely a pretext for discrimination . . . ." <u>Hawkins v. Ceco Corp.</u>, 883 F.2d 977, 985 (11th Cir. 1989). By the way, Plaintiff fails to assert -- or to present evidence -- that the personnel committee did not, in fact, believe that she had done the pertinent acts.