**Khalilah McKENZIE, Plaintiff,**

v.

**EAP MANAGEMENT CORP., d/b/a Kentucky Fried Chicken, Jhonny Rojas and Jeanine Mediate, Defendants.**

No. 98–6062–CIV.

United States District Court, S.D. Florida.

Feb. 4, 1999.

Charles Thomas Whitelock, Whitelock & Associates, Fort Lauderdale, FL, Todd William Shulby, Whitelock & Associates, Fort Lauderdale, FL, for Khalilah McKenzie.

Erin Elizabeth Gill, Muller Mintz Kornreich Caldwell Casey Crosland & Bramnick, Miami, FL, Michael William Casey, III, Muller Mintz Kornreich Caldwell Casey Crosland & Bramnick, Miami, FL, for E.A.P. Management Corp, Johnny Rojas, Jonine Meviate.

### ORDER GRANTING MOTION FOR SUMMARY JUDGMENT ON FEDERAL CLAIMS and FINAL ORDER OF DISMISSAL

DIMITROULEAS, District Judge.

THIS CAUSE is before the Court upon Defendants' Motion for Summary Judgment [DE 31]. The Court has carefully considered the motion and the record, and is fully advised in the premises.

### I. BACKGROUND

Plaintiff's Second Amended Complaint contains fourteen counts, alleging the following violations of the law: Title VII race discrimination (Count I); 42 U.S.C. § 1981 race discrimination (Count II); Florida Civil Rights Act ("FCRA") race discrimination (Count III); Americans with Disabilities Act ("ADA") discrimination (Count IV); FCRA disability discrimination (Count V); retaliation under the ADA (Count VI); retaliation under the FCRA (disability) (Count VII); and, various state tort claims, including invasion of privacy (Count VIII), false imprisonment (Count IX), intentional infliction of emotional distress (Count X), negligent infliction of emotional distress (Count XI), negligent training/supervision (Count XII), negligent retention (Count XIII), and defamation (Count XIV).

The facts underpinning the complaint, taken principally from plaintiff's deposition and giving plaintiff the benefit of the doubt as to all disputed facts, tell a story of a personality dispute between plaintiff and her store manager, and an incident of missing money from a cash register that led to plaintiff's termination. Plaintiff, a black female, with a steel rod in her leg from a previous automobile accident, was employed for about two months at a Kentucky Fried Chicken restaurant operated by defendant EAP Management, with defendant Johnny Rhojas as Assistant Store Manager and defendant Jeanine Mediate as District Manager. Plaintiff's personality clash was with the Store Manager, Jo Ann Murgolo, the sister of District Manager Mediate. Plaintiff's deposition at pp. 101–107 (hereinafter, "Plaintiff's depo at").

The events which Plaintiff alleges give rise to her claims of race and disability discrimination are fairly straightforward. At the beginning of her employment, defendants knew about her leg, for which plaintiff could not stand longer than six hours without a break. About six weeks into her employment, while still in her probationary period, Plaintiff called in sick on a Friday, stating that her leg was bothering her and she was unable to stand. Store Manager Murgolo demanded a note from her doctor. Plaintiff submitted a

note, but Murgolo demanded a more extensive note. Plaintiff submitted a more extensive note shortly thereafter, but Murgolo stated that Plaintiff was terminated because it took Plaintiff too long to submit the note. Plaintiff then appealed to District Manager Mediate, who told Plaintiff to return to work.

On Plaintiff's first day back to work, a customer paid for an order with a $50 bill. At that moment, three cashiers were on duty: Plaintiff; another black female, Lisa Vidal (known as "Lisa B."); and a white female, Lisa Newell. Both of the other women had passed their probationary period. Assistant Manger Rhojas, a male, was in charge. The bill was handed by a customer to Lisa B., who called out for Rhojas, pursuant to procedure. Rhojas, in the back at the time, asked Plaintiff to bring the $50 bill back to him. Plaintiff brought the bill to Rhojas, Rhojas approved it, and asked Plaintiff to return the bill to Lisa B. Plaintiff returned the bill to Lisa B. It is undisputed that at no time did the white cashier, Lisa Newell, have possession of the $50 bill.

Near closing time that same day, Rhojas counted up the money in each register, and could not find the $50 bill. Each of the three cashiers disclaimed knowledge of the whereabouts of the $50 bill. Rhojas called Mediate, the District Manager, to inform her of the situation. After speaking to Mediate, Rhojas called Lisa Newell to the phone. Mediate apparently asked Newell if she would strip-search Lisa B. and Plaintiff. Newell refused. Mediate then spoke to Plaintiff. She asked Plaintiff if Mediate came to the store to search Plaintiff, would Plaintiff remain in the store and wait for her. Plaintiff agreed to wait. Plaintiff's depo at 142–43, 165.

After finishing the clean up, the three cashiers and Rhojas waited for Mediate to arrive. At one point, Plaintiff requested to use the bathroom. Rhojas refused, unless someone would agree to watch Plaintiff, to prevent possible destruction of the missing $50 bill. Newell agreed to watch Plaintiff while she used the bathroom.

Once Mediate arrived, she called Lisa B. into her office. About five minutes later, Lisa B. emerged. Next, Plaintiff was called into the office. Mediate, who Plaintiff states was embarrassed, performed a modified strip search of Plaintiff, in which she reached into the pants pockets of Plaintiff, and inside the pockets of a second pair of pants worn by Plaintiff. Mediate also drug her fingers under Plaintiff's breasts, inside her bra, to check for the missing $50. After finishing with Plaintiff, Mediate asked Newell to empty her pockets. The $50 bill was not found.

The next day Plaintiff was due to work, Mediate called Plaintiff and terminated her employment. The reason given on the personnel action form was violation of company procedure by accessing someone else's assigned register, an action that Plaintiff states Assistant Manger Rhojas had ordered her to do, earlier in the day of the missing $50 bill (prior to the $50 bill being received at the store). Plaintiff believed she was fired for suspicion of stealing the $50 bill, which she has always denied taking.

## II. DISCUSSION

### A. Summary Judgment Standard

The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court should not grant summary judgment unless it is clear that a trial is unnecessary, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and any doubts in this regard should be resolved against the moving party, *Adickes v. S.H.*

*Kress & Co.*; 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548. To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. *Id.* at 325, 106 S.Ct. 2548.

After the movant has met its burden under Rule 56(c), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electronic Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). According to the plain language of Fed. R.Civ.P. 56(e), the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings," but instead must come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348.

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. *Anderson*, 477 U.S. at 257, 106 S.Ct. 2505. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir.1990). If the evidence advanced by the non-moving par-

ty "is merely colorable, or is not significantly probative, then summary judgment may be granted." *Anderson*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202.

## B. Race Discrimination[1]

 Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). A plaintiff may establish a prima facie case of discrimination either by "statistical proof of a pattern of discrimination," or "direct evidence of discrimination, which consists of 'evidence which, if believed, would prove the existence of discrimination without inference or presumption,'" or by "circumstantial evidence to prove discriminatory intent, using the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–804, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973)." *Holifield v. Reno*, 115 F.3d 1555, 1561–62 (11th Cir.1997) (citations omitted). In the usual case, direct evidence is not present and the plaintiff must rely on circumstantial evidence. *Id.* at 1562.

 Under the *McDonnell Douglas* framework, a plaintiff establishes a prima facie case of race discrimination under Title VII by showing: (1) the plaintiff belongs to a racial minority; (2) she was subjected to adverse job action; (3) her employer treated similarly situated employees of other races more favorably; and (4) she was qualified to do the job. *Holifield*, 115 F.3d at 1562; *see also McDon-*

1. Where Section 1981 is used as a parallel remedy for race discrimination which violates the equal protection clause of the Fourteenth Amendment, the elements of such a claim are the same as the elements of a Title VII action. *See Turnes v. AmSouth, Bank N.A.*, 36 F.3d 1057, 1060 (11th Cir.1994).

Similarly, claims for race discrimination under the Florida Civil Rights Act (FCRA) are treated under the same legal standard as the federal Title VII claims. The Florida courts have held that decisions construing Title VII are applicable when considering claims under the Florida Civil Rights Act, because the Florida act was patterned after Title VII. *Harper v. Blockbuster Entertainment Corporation*, 139 F.3d 1385, 1387 (11th Cir.1998) (citing *Ranger Ins. Co. v. Bal Harbour Club, Inc.*, 549 So.2d 1005, 1009 (Fla.1989); *Florida State Univ. v. Sondel*, 685 So.2d 923, 925 n. 1 (Fla.1st Dist.Ct.App.1996); *Kelly v. K.D. Construction of Fla., Inc.*, 866 F.Supp. 1406, 1411 (S.D.Fla.1994)).

*nell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817; *Jones v. Bessemer Carraway Med. Ctr.,* 137 F.3d 1306, 1310 (11th Cir.1998). "Demonstrating a prima facie case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination." *Holifield,* 115 F.3d at 1562 (citations omitted).

■ If a prima facie case is shown, the defendant must "articulate some legitimate, nondiscriminatory reason for the [adverse employment action]." *Jones,* 137 F.3d at 1311. If this is done, then the plaintiff may attempt to show that the proffered reason was merely a pretext for the defendant's acts. *Id.* at 1311; *see also Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. *Id.*

In this case, Plaintiff was a member of a racial minority and suffered an adverse job action in her termination. However, Plaintiff cannot show that similarly situated non-minority employees were treated more favorably. The key distinction in the case at bar is that the white cashier, Lisa Newell, never had possession of the missing $50 bill. Furthermore, Plaintiff conceded in her deposition that what she felt was discriminatory about her termination was that Lisa B., the other black cashier, and the one who last had possession of the $50 bill, was not terminated along with Plaintiff. Plaintiff's depo at 158. Thus, there are no similar situated non-minority employees who were treated more favorably than Plaintiff. *Jones v. Bessemer Carraway Medical Center,* 137 F.3d 1306, 1311 (11th Cir.1998), *reversed in part on other grounds on rehearing,* 151 F.3d 1321, 1322 (11th Cir.1998).

■ Even if Plaintiff could show a material issue of fact as to her prima facie case, Defendants have proffered a legitimate reason for Plaintiff's termination, namely, that she was on probation, had a previous incident of missing money (Plaintiff depo at p. 104), was insubordinate to Store Manger Murgolo (Plaintiff depo at pp. 101–106, 113), and had violated company rules by accessing another register. Plaintiff, on the other hand, has not presented any evidence of pretextual reason for her termination that has anything to do with her race.[2] Rather, if there was a "pretext" for Plaintiff's termination, it was that she did not get along with the Store Manager, the sister of Mediate, the District Manager who terminated Plaintiff's employment. This type of pretext, absent any evidence of racial discrimination, is not actionable under Title VII, Section 1981 or the FCRA as race discrimination.

### B. Disability Discrimination[3]

To establish a prima facie case of discrimination under the ADA, a plaintiff must show that she: 1) has a disability; 2) is a qualified individual; and 3) was unlawfully subjected to discrimination because of the disability. 42 U.S.C. § 12112(a); *Talavera v. School Board of Palm Beach County,* 129 F.3d 1214, 1217 (11th Cir. 1997). In this case, Plaintiff apparently alleges multiple theories of disability discrimination, including disparate treatment, failure to accommodate, and harassment.

■ "Disability" is defined as A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; B) a record of such impairment; or C) being regarded as having such an impairment. 42 U.S.C. § 12102(2). When the claim is that the limited major life activity is that of "working," then the condition must "sub-

---

**2.** Plaintiff testified that the occasional racial and sexual banter between Plaintiff, Rhojas, a different female manager, and other female cashiers did not offend Plaintiff. Plaintiff depo at 212–213.

**3.** Again, parallel claims under the FCRA for disability discrimination are analyzed under the same framework as ADA claims. *See supra,* note 1.

stantially restrict the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." *Pritchard v. Southern Company Services,* 92 F.3d 1130, 1133 (11th Cir.1996),·*cert. denied,* 520 U.S. 1274, 117 S.Ct. 2453, 138 L.Ed.2d 211 (1997) (citing 29 C.F.R. § 1630.2(j)(3)(i)).

A "qualified" individual is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Finally, "discriminate," in the ADA context, is defined as "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or an employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A).

### 1. "Disability"

 Under any theory of recovery for disability discrimination, Plaintiff must show that she was disabled under the ADA. The Eleventh Circuit recently held that a plaintiff "must provide some evidence beyond the mere existence and impact of a physical impairment to survive summary judgment." *Swain v. Hillsborough County School Board,* 146 F.3d 855, 858 (11th Cir.1998). Plaintiff has provided no such evidence in this case. Rather, Plaintiff describes a few minor limitations on her ability to work. Plaintiff's depo at 50–51, 89–90. Instead, Plaintiff rests her claim of having a "disability" under the ADA on the third prong of the test, that Defendants regarded Plaintiff as being disabled, based upon a handful of comments by Store Manger Murgolo. Plaintiff's depo at 185–188. The Court finds that these comments do not rise to the level of Plaintiff meeting the definition of disabled.

### 2. Failure to Accommodate

 Even if Plaintiff could survive summary judgement on whether or not she was "disabled" under the ADA, her own testimony belies any claim of discrimination for failure to accommodate. Plaintiff testified that she needed the extra hours she worked, and was only refused breaks by Store Manger Murgolo on two occassions. Plaintiff's depo at 194–199. This set of facts does not rise to the level of failure to accommodate, and thus summary judgment is appropriate on this claim. *Stewart v. Happy Herman's Cheshire Bridge, Inc.,* 117 F.3d 1278, 1286–87 (11th Cir.1997).

### 3. Harassment

 Plaintiff also alleges a harassment claim based upon comments Murgolo made about Plaintiff's leg. Although the Eleventh Circuit has not addressed this issue, it would appear that a harassment claim can. be brought under the ADA. *Haysman v. Food Lion, Inc.,* 893 F.Supp. 1092, 1107 (S.D.Ga.1995). The elements of a hostile work environment claim are as follows: (1) the employee must be a member of a protected class, (2) the employee must have been subjected to unwelcome harassment, (3) the harassment must be based on the protected characteristic, (4) the harassment must have affected a term or condition of employment. *Haysman* 893 F.Supp. at 1107, citing *Cross v. State of Alabama,* 49 F.3d 1490, 1504 (11th Cir. 1995) (sexual harassment). Thus, to survive summary judgment Plaintiff must show that she is a member of protected class, or "disabled," under the ADA. As described above, this Court finds as a matter of law that she cannot make that showing under the evidence presented to this Court.

### C. Retaliation

 Plaintiff has also alleged a retaliation claim under the ADA and FCRA. To establish a prima facie case of retaliation, a plaintiff must establish: (1) statu-

torily protected expression; (2) adverse employment action; and (3) a causal link between the two events. *Stewart,* 117 F.3d at 1287; *Holifield,* 115 F.3d at 1566 (citations omitted). "To meet the causal link requirement, the plaintiff 'merely has to prove that the protected activity and the negative employment action are not completely unrelated.'" *Holifield,* 115 F.3d at 1566 (quoting *E.E.O.C. v. Reichhold Chemicals, Inc.,* 988 F.2d 1564, 1571–72 (11th Cir.1993)). However, "[t]he plaintiff must at least establish that the employer was actually aware of the protected expression at the time the employer took adverse employment action against the plaintiff" and "[t]he employer's awareness of the statement may be established by circumstantial evidence." *Holifield,* 115 F.3d at 1566 (citing *Goldsmith v. City of Atmore,* 996 F.2d 1155, 1163 (11th Cir.1993); *Weaver v. Casa Gallardo, Inc.,* 922 F.2d 1515, 1524 (11th Cir.1991)).

█ Once the plaintiff establishes his prima facie case, the employer must proffer a legitimate, non-discriminatory reason for the adverse employment action. *Holifield,* 115 F.3d at 1566 (citing *E.E.O.C. v. Reichhold Chemicals, Inc.,* 988 F.2d 1564, 1571–72 (11th Cir.1993)). If the employer offers legitimate reasons for the employment action, the plaintiff must then demonstrate that the employer's proffered explanation is a pretext for retaliation. *Holifield,* 115 F.3d at 1566 (citing *Meeks,* 15 F.3d at 1021; *Goldsmith v. City of Atmore,* 996 F.2d 1155, 1163 (11th Cir.1993)).

Applying this law to this case, Plaintiff argues that her complaint to Mediate following Murgolo's initial termination of Plaintiff for failing to provide a doctor's note for her absence constituted her statutorily protected expression. Even accepting plaintiff's version of the facts,[4] plaintiff conceded in her deposition that District Manager Mediate's decision to terminate

Plaintiff was not based upon the condition of Plaintiff's leg. Plaintiff's depo at 192. Furthermore, as stated above, there is no evidence that Plaintiff's termination was related to her complaints to Mediate about Murgolo's handling of Plaintiff's absence due to her leg. Rather, the incident of the missing $50 was the trigger event for Plaintiff's termination. *Stewart,* 117 F.3d at 1287. Thus, summary judgment is appropriate on Plaintiff's retaliation claims.

### D. Conclusion

The facts presented to this Court do not evidence discriminatory intent based upon Plaintiff's race or her bad leg. That Plaintiff can point to discrepancies in the nondiscriminatory reasons why the Defendants terminated Plaintiff's employment does not evidence race or disability discrimination. Even if defendants fired plaintiff for a technical rules violation, on the pretext that they believed she had stolen money and was antagonistic to Store Manger Murgolo, such pretext is only actionable as discrimination if Plaintiff's termination was done for an impermissible reason. Whether McKenzie was terminated for accessing another's cash drawer or for poor performance or for a personality clash with management is not a legally important distinction; what matters is whether there is any evidence of discrimination to undermine the stated reasons for termination. No evidence of pretext based upon race or disability has been presented. Although defendants have several non-discriminatory reasons for terminating Plaintiff, employers in Florida do not have to have a reason to fire at will employees; they just cannot fire them for particular reasons, such as race or disability.

### E. State Claims

With the grant of summary judgment and dismissal of the federal claims, this Court declines to exercise jurisdiction over

---

4. Given Plaintiff's testimony that she really was complaining to Mediate about Murgolo's attitude (Plaintiff's depo at p. 200), the Court has grave doubts about whether Plaintiff can survive summary judgment on the issue of the occurrence of protected expression as to disability discrimination.

the remaining state claims. The asserted basis for this Court's jurisdiction over the state claims is 28 U.S.C. § 1367, supplemental jurisdiction as to the Plaintiff's state law claims. However, 28 U.S.C. § 1367(c)(3) allows a district court to decline to exercise supplemental jurisdiction when all claims over which it has original jurisdiction have been dismissed, as is now the case herein.

Therefore, the Court, pursuant to Section 1367(c)(3), will exercise its discretion and **DISMISS** the state law claims set forth in Counts XIII through XIV, as the federal claims presented here are dismissed.

## CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion for Summary Judgment [DE 31] is hereby **GRANTED in part** as to Counts I, II, III, IV, V, VI, and VII of the Plaintiff's Complaint;

2. Counts I, II, III, IV, V, VI, and VII of the Plaintiff's Complaint are hereby **DISMISSED WITH PREJUDICE** for the reasons stated above;

3. Counts VIII, IX, X, XI, XII, XIII and XIV of the Plaintiff's Complaint are hereby **DISMISSED WITHOUT PREJUDICE** in that this Court declines to exercise supplemental jurisdiction over these remaining state claims;

4. All pending motions are hereby **DENIED AS MOOT;**

5. The Clerk shall close this case.