[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

————————————————

No. 24-10392

Non-Argument Calendar

————————————————

CYNTHIA FLETCHER,

Plaintiff-Appellant,

*versus*

JM SMUCKER COMPANY, THE,
BIG HEART PET BRANDS INC,

Defendants-Appellees.

————————————————

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 2:21-cv-01411-AMM

————————————————

Before NEWSOM, LAGOA, and WILSON, Circuit Judges.

PER CURIAM:

Cynthia Fletcher sued the J.M. Smucker Company and Big Heart Pet Brands ("the Manufacturers") for racial discrimination, gender discrimination, and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a), 3(a), and 42 U.S.C. § 1981. The Manufacturers filed a motion for summary judgment on these claims, which the district court granted. We affirm.[1]

## I

The facts of this case are known to the parties, and we repeat them here only as necessary to decide the case. Fletcher was a technician at the Manufacturers' facility in Decatur, Alabama. During her time as a technician, Fletcher violated several of the Manufacturers' policies. First, she violated the Manufacturers' safety protocol, resulting in a verbal warning. Second, she violated the attendance policy, resulting in a written warning. Third, she violated the COVID-19 policy and the cell-phone policy, resulting in another written warning. After her third violation, Fletcher complained to her supervisor that, although black employees were disciplined for

---

[1] "We review a district court's grant of summary judgment *de novo*, applying the same legal standards applied by the district court." *Valley Drug Co. v. Geneva Pharms., Inc.*, 344 F.3d 1294, 1303 (11th Cir. 2003).

such violations, white employees were not.  Finally, Fletcher failed to appear for a scheduled overtime shift, resulting in her termination.

The Manufacturers maintain that they terminated Fletcher because, pursuant to their disciplinary policy, she had accrued enough points for termination.  Fletcher argues that this proffered reason is pretextual.  First, she argues that she was fired because of her race and gender.  Second, she argues that she was fired as retaliation for engaging in statutorily-protected activity—namely, for complaining that the Manufacturers disciplined black employees, but not white employees, who violated COVID-19 safety protocols.  Neither of Fletcher's claims has merit.

## II

We begin by addressing Fletcher's claims of racial and gender discrimination.  The district court, applying the *McDonnell Douglas* burden-shifting framework, ruled that, although Fletcher did establish a *prima facie* case of discrimination, she failed to show that the Manufacturers' nondiscriminatory reasons for terminating Fletcher—*i.e.*, Fletcher's violations of safety protocol, the attendance policy, the cell-phone policy, and the COVID-19 policy—were pretextual.  Further, the district court ruled that Fletcher's claims failed under both the convincing-mosaic and mixed-motive theories of liability.  On appeal, to demonstrate pretext, Fletcher argues that she was treated differently from similarly situated

individuals—*i.e.*, her comparators—and that the Manufacturers miscalculated her disciplinary points. Additionally, Fletcher contends that she has presented enough evidence to create a triable issue of fact under either a convincing-mosaic or mixed-motive theory of liability. We address each argument in turn.

First, the comparators.[2] Fletcher has presented five male comparators whom, she argues, the Manufacturers treated better than her, despite the fact, she says, that they engaged in misconduct similar to her own. But these comparators cannot demonstrate pretext, because they are insufficiently similar to her. Three of them did not have the same supervisor as Fletcher. *See Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1227–28 (11th Cir. 2019) (en banc) (holding that, ordinarily, a similarly situated comparator must "have been under the jurisdiction of the same supervisor as the plaintiff"). And the other two comparators differed substantially from Fletcher in their disciplinary histories. Whereas these comparators had violated only the attendance policy, Fletcher's disciplinary history reflected safety-protocol, attendance-policy, cell-

---

[2] In *Lewis v. City of Union City, Georgia*, we held "that a meaningful comparator analysis must be conducted at the *prima facie* stage of *McDonnell Douglas*'s burden-shifting framework." 918 F.3d 1213, 1218 (11th Cir. 2019) (en banc). But, we explained, a plaintiff may *also* conduct a comparator analysis at the pretext stage. *Id.* at 1223 n.9 ("Evidence necessary and proper to support a plaintiff's *prima facie* case may of course be used, later as it were, to demonstrate that the defendant's explanation for its conduct was pretextual.").

phone-policy, and COVID-19-policy violations.  *See id.* at 1228 (holding that, ordinarily, a similarly situated comparator "will share the plaintiff's employment or disciplinary history").  Because her comparators are insufficiently similar to her, Fletcher cannot point to their differential treatment as evidence of pretext.

Similarly ineffective is Fletcher's argument that, because the Manufacturers miscalculated how many disciplinary points she had accrued, their reasons for termination were pretextual.  Even if we assume that the Manufacturers *did* miscalculate her disciplinary points, Fletcher has not shown that they did so for a discriminatory reason.  "An employer 'may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long *as its action is not for a discriminatory reason.*'"  *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1363 n.3 (11th Cir. 1999) (quoting *Jones v. Bessemer Carraway Med. Ctr.*, 151 F.3d 1321, 1324 n. 16 (11th Cir. 1998)) (emphasis in original).

Fletcher separately contends that, under either a convincing-mosaic[3] or mixed-motive[4] theory of liability, she has presented

---

[3] Under the convincing-mosaic theory, "an employee may prove retaliation with any circumstantial evidence that creates a reasonable inference of retaliatory intent." *Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1310 (11th Cir. 2023).

[4] "[T]o survive a defendant's motion for summary judgment, a plaintiff asserting a mixed-motive claim need only produce evidence sufficient to convince a jury that: (1) the defendant took an adverse employment action against the

enough evidence to create a triable issue of fact. But Fletcher's claims fail under these theories for the same reason that they fail under the *McDonnell Douglas* burden-shifting framework: She has not shown that discrimination played any part in her termination. To advance her convincing-mosaic and mixed-motive theories of liabilities, Fletcher relies, again, on her comparators. But, as just explained, these comparators were not similarly situated to her. Fletcher's only other "evidence" is an email detailing her allegation that the Manufacturers racially discriminated in their enforcement of COVID-19 safety protocols. But this email in no way confirms the veracity of Fletcher's complaint—it only describes the complaint.

The district court did not err in granting summary judgment to the Manufacturers on Fletcher's discrimination claims.

## III

Next, retaliation. "To establish a prima facie case of retaliation under Title VII, the plaintiff must show (1) that she engaged in statutorily protected expression; (2) that she suffered an adverse employment action; and (3) that there is some causal relation between the two events." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d

---

plaintiff; and (2) a protected characteristic was *a* motivating factor for the defendant's adverse employment action." *Quigg v. Thomas Cnty. Sch. Dist.*, 814 F.3d 1227, 1232–33 (11th Cir. 2016) (alterations accepted) (citation and quotation marks omitted).

1361, 1363 (11th Cir. 2007) (citation and quotation marks omitted). The district court ruled that, although Fletcher established the first and second elements of a *prima facie* retaliation claim, she failed to establish the third element: causation. Fletcher argues that the district court erred in so ruling. Specifically, Fletcher contends that the temporal proximity of her statutorily protected activity—*i.e.*, complaining that the Manufacturers disciplined black employees, but not white employees, who violated COVID-19 safety protocols—and the adverse employment action—*i.e.*, termination—is sufficient to survive summary judgment on her retaliation claim.

But, as the district court correctly ruled, in Fletcher's case, temporal proximity is insufficient to show causation. For, although Fletcher was terminated seven days after filing her complaint, her intervening violation of the attendance policy—which occurred after other safety-protocol, attendance-policy, cell-phone-policy, and COVID-19-policy violations—severed the causal inference created by temporal proximity. *See Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1309 (11th Cir. 2023) ("[T]he intervening discovery of employee misconduct can sever the causal inference created by close temporal proximity.").

Nor can Fletcher succeed under the convincing-mosaic theory. The only evidence that Fletcher has presented in support of this theory is the temporal proximity of her complaint and her termination. And, as explained above, this evidence alone cannot demonstrate causation. *Id.* at 1310–11.

8                        Opinion of the Court                    24-10392

The district court did not err in granting summary judgment to the Manufacturers on Fletcher's retaliation claim.

★ ★ ★

Accordingly, we **AFFIRM** the district court's judgment.