**Raymond HENRY, Plaintiff,**

v.

**CITY OF TALLAHASSEE, Defendant.**

**No. 4:01–cv–62/LAC.**

United States District Court,
N.D. Florida,
Tallahassee Division.

June 24, 2002.

Marie A. Mattox, Tallahassee, FL, for Plaintiff.

Michael P. Spellman, Assistant City Attorney, Tallahassee, FL, for Defendant.

### ORDER GRANTING SUMMARY JUDGMENT

COLLIER, District Judge.

THIS CAUSE comes before the Court on Defendant's motion for summary judgment and documents in support thereof (Docs.42–45, 47–48). Plaintiff timely filed a memorandum and evidentiary materials in opposition (Docs.54–57). Plaintiff and Defendant both requested the Court to take judicial notice of various documents

(Docs.45, 57). Defendant moved to strike Plaintiff's request for judicial notice and supporting documentation, as well as the affidavits of Plaintiff and Plaintiff's counsel (Docs.70–72) and Plaintiff responded (Docs.75–76). The Court has taken the motion for summary judgment under advisement (Doc. 50), and is now prepared to rule on all pending motions. For the reasons stated below, Defendant's motion for summary judgment is **GRANTED**.

## I. STATEMENT OF THE CASE

### A. Background

For purposes of ruling on Defendant's motion for summary judgment, the following facts are viewed in a light most favorable to Plaintiff, the nonmoving party.[1] Since April 1997, Walter McNeil has been the Tallahassee Police Department (TPD) Chief of Police (Doc. 44, p. 10). The two Chiefs that preceded McNeil were Thomas Coe (1994–1997) and Melvin Tucker (1979–1994) (*Id.*). Under Tucker and Coe, disciplinary measures were not clearly articulated (*Id.*).[2] However, McNeil has worked to codify disciplinary procedures, to gather information from supervisors and the Police Benevolent Association about officers' truthfulness during investigations, to incorporate these principles into the Police Benevolent Association contract, and to set forth specific disciplinary standards (*Id.*).

Plaintiff is a black law enforcement officer employed by TPD. Prior to filing this action, Plaintiff filed suit against Defendant in state court alleging discrimination and retaliation. The case went to trial and concluded in July 1999 in Plaintiff's favor.[3]

On November 6, 1999, Plaintiff and another TPD officer, Leon Sapp, contracted to provide off-duty security at a teen dance at Club Ground Zero in Tallahassee, Florida (Doc. 44, pp. 2–3). As promoter, Travis Burroughs was responsible for paying Plaintiff and Sapp for their services (*Id.*).

Shortly after midnight, Burroughs decided to close the dance early (*Id.*). Burroughs told the officers that he was dissatisfied with their performance and that he might not pay the officers at all or only for one hour of work (Doc. 44, p. 3). Plaintiff stated that he told Burroughs, "All I wanted was to be paid and the police would be out of the way" (*Id.*).

Plaintiff and Burroughs dispute whether Burroughs then became disorderly and threatening (*Id.*). Plaintiff handcuffed Burroughs and escorted him to a small office within the club (*Id.*). Plaintiff radioed TPD dispatch and requested transport of a prisoner (*Id.*). The dispatch, which went out to the dispatcher and on-duty officers, was interpreted by some officers as a request for emergency support leading some officers to respond in emergency mode (Doc. 44, p. 3). Officers Robert Hamby, Brian Reeder, and Daniel Augustyniak arrived within a minute of Plaintiff's dispatch (*Id.* at 4–5). At their arrival,

---

1. Furthermore, as discussed in Part II.B., *infra*, some of the facts are construed according to Local Rule 56.1(A). *See* N.D. Loc. R. 56.1(A). Where the Court cites to Defendant's statement of facts (Doc. 44), Plaintiff has failed to properly controvert that specific fact and it is therefore deemed admitted for the limited purpose of ruling on Defendant's motion for summary judgment.

2. Other Chiefs, particularly Chief Tucker, did not impose discipline despite the outcome of an investigation (Doc. 44, p. 10).

3. Pursuant to Plaintiff's request (Doc. 57), the Court takes judicial notice of the existence of the jury verdict in *Henry v. City of Tallahassee*, Case Nos. 92–4063, 93–2126 (Fla.Cir.Ct. July 28, 1999).

Burroughs and Plaintiff were outside the office and Plaintiff had removed the handcuffs from Burroughs (*Id.* at 5). Burroughs claimed that Plaintiff would only remove the handcuffs after Burroughs agreed to pay Plaintiff and Sapp (*Id.*). Plaintiff claimed that he removed the handcuffs after Burroughs agreed to calm down (*Id.*).

After being paid by Club Ground Zero owner Charles Watzke, Plaintiff left while the other officers remained on scene (Doc. 44, p. 5). Burroughs told Officer Hamby that he wanted to file a formal complaint, and Burroughs was interviewed by Lt. Ken Bergstrom telephonically and by Sgt. Maurice Laws at the scene (*Id.*). The other officers wrote contemporaneous memoranda that were included in the investigative file (*Id.*).

After leaving Club Ground Zero, Plaintiff contacted TPD dispatch (Doc. 44, p. 6). The transmission provides in relevant part:

| | |
|---|---|
| Dispatch: | Good morning, Tallahassee Police Department, Jermaina [*sic*]. How may I help you? |
| Henry: | Yeah Jermaina [*sic*], this is Sgt. Henry. How you doing? |
| Dispatch: | Good, how are you? |
| Henry: | I'm doing fine. I'm 10–8 (available) from this place over here. This Signal 80 (off-duty employment). |
| Dispatch: | All right. What's your ID? |
| Henry: | 201 (badge ID). |
| Dispatch: | All right. |
| Henry: | O.K. What is [Officer] Hamby's cell phone number? |
| Dispatch: | Wait. Your [*sic*] 9201 (off-duty, badge ID). You're out on a 23 (miscellaneous call for service)? |
| Henry: | Yeah I was out, I'm 10–8 (available) from that 23 (miscellaneous call for service). |
| Dispatch: | O.K., how do you want me to clear it? |
| Henry: | *Go ahead uh, uh B–Boy* (no report written). *He paid me finally. I was gonna lock him up.* |
| Dispatch: | O.K. |
| Henry: | *Yeah he trying, he trying to, trying to abscond from paying me and Leon Sapp from working today. Guy that had this party.* |
| Dispatch: | Uh huh. |
| Henry: | *So I, that's why I called for a unit for transport. I was gonna charge him with defrauding.* Anyway, uh give me uh Hamby's phone number. |
| Dispatch: | O.K., at home? |
| Henry: | No, no, no. Hamby got a mobile phone. He was on scene. I just left there. |
| Dispatch: | O.K., hold on. Let me get the red sheet. |

(*Id.* at 6–7) (emphasis in Defendant's statement).

On November 8, 1999, Burroughs lodged a complaint with Internal Affairs (IA) (*Id.*). Because the conduct at issue was potentially criminal, the IA investigation was suspended and TPD's Criminal Investigation Division (CID) commenced an investigation (*Id.*). Pending the outcome of the CID investigation, Chief McNeil suspended Plaintiff with pay and suspended Plaintiff's abilities to take law enforcement action, to work secondary employment, and to carry a concealed weapon without a permit (*Id.* at 7–8).

On November 30, 1999, the CID investigation culminated in a Probable Cause affidavit charging Plaintiff with felony false imprisonment and misdemeanor perjury (Doc. 44, p. 8). Florida Circuit Judge John Crusoe reviewed the affidavit and found sufficient probable cause to sign warrants for Plaintiff (*Id.*). Plaintiff turned himself in that day.

Following the CID investigation, on December 6, 1999, Florida Department of

Law Enforcement (FDLE) contacted Chief McNeil and requested a complete copy of all documentation relating to "the referenced misconduct (false imprisonment)" to determine "whether or not a basis exists for pursuit of any disciplinary action by the Criminal Justice Standards Training Commission" (Doc. 44, p. 16; Doc. 48, Ex. O2).

The IA investigation renewed after the CID investigation concluded, and IA reinterviewed Plaintiff under oath on January 12, 2000 (Doc. 44, p. 8). IA collected documents and conducted 23 interviews (including the backup officers and two interviews with Officer Sapp) in its investigation (*Id.* at 8–9).

On February 3, 2000, the State Attorney's Office for Florida's Second Judicial Circuit issued an information charging Plaintiff with felony false imprisonment and misdemeanor perjury (Doc. 45, Ex. A).[4]

The IA investigation culminated in March 2000 with a 79–page investigative report (*Id.* at 9–10; Doc. 48, Ex. P).[5] The report, which was ultimately adopted by Chief McNeil, recommended sustaining 26 counts of improper conduct and one count of improper procedure against Plaintiff, and exonerating Plaintiff of one court of improper conduct (Doc. 48, Ex. P., pp. IA 79–80).[6]

After reviewing the IA and CID investigations, Chief McNeil spoke with the City

4. Pursuant to Defendant's request, (Doc. 45), the Court takes Judicial Notice of the existence of the information, the jury verdict, and the judgment. After Plaintiff's March 27, 2000 termination from TPD, on September 1, 2000, a Florida jury returned guilty verdicts on both criminal charges (Doc. 44, p. 13). The Florida Circuit Court for the Second Judicial Circuit sentenced Plaintiff and he filed an appeal which remains pending before the Florida First District Court of Appeal (*Id.*).

5. On February 10, 2000, IA provided Plaintiff with an opportunity to review the investigative report (Doc. 44, p. 9). Plaintiff submitted an appeal on February 15, 2000 (*Id.*). Because the appeal did not cite any specific facts or procedural violations, the complaint remained sustained (*Id.*). However, one witness contacted IA after Plaintiff's review, so on February 24, 2000, IA again afforded Plaintiff the opportunity to review the new interview and investigative report, although the findings remained unchanged (*Id.*). Plaintiff did not submit another appeal (*Id.*).

6. Specifically, Chief McNeil sustained the following:
 - 8 counts of Improper Conduct by giving false testimony (falsely stating that upon Plaintiff's arrival there was a meeting between Plaintiff, Sapp, theater promoter Dan Youkin and Burroughs; falsely stating that Burroughs threatened Henry;

stating Youkin was present when Burroughs told Plaintiff that he was not going to pay the officers; falsely stating Burroughs was telling "his boys" he would "bust a cap in [Plaintiff's] ass"; falsely stating that another employee, Charles Watzke, was present when he handcuffed Burroughs; falsely stating "I never said I was going to take him to jail for him not paying me"; denying telling any TPD employee that he was going to charge Burroughs with fraud; and denying talking about the investigation with any unauthorized person)
 - 2 counts of Improper Conduct by falsification of records (submitting a report that falsely indicated that Burroughs made verbal threats to do bodily harm and solicited friends to fight Plaintiff; submitting use of force report that falsely indicated use of force was justified and failing to obtain chain of command review)
 - 2 counts of Improper Conduct by compromising an administrative investigation (twice contacting Officer Sapp to influence his testimony in the IA and CID investigations)
 - 1 count of Improper Conduct by Rudeness (use of obscene language when stating "if they don't pay me my money, I'm gonna put their mother-fuckin ass in jail")
 - 1 count of Improper Procedure by Report Completion (filing a report without having it approved and failing to do so before getting off duty)

Manager and decided to terminate Plaintiff based on his belief that Plaintiff had been untruthful in the IA and CID investigations and had committed a crime (*Id.*; Doc. 48, Ex. O, ¶ 6). On March 20, 2000, Chief McNeil advised Plaintiff of his intent to terminate Plaintiff, effective March 27, 2000 (Doc. 44, p. 12). On the day of his pre-termination meeting, Plaintiff tendered his written resignation (*Id.*).

On April 10, 2000, TPD's director of Employee Resources responded to FDLE's December 6, 1999 request for a complete record of documentation (*Id.* at 16). Pursuant to Florida law, TPD forwarded materials to FDLE (*Id.* at 17; Doc. 45, Ex. D). FDLE decertified Plaintiff in August 2001 (Doc. 44, p. 17).

### B. Procedural History

On September 21, 1999, Plaintiff filed a Charge of Discrimination with the Florida Department of Human Resources claiming race discrimination and retaliation. On March 24, 2000, Plaintiff filed an addendum to his Charge of Discrimination again charging race discrimination and retalia-

tion with the additional claim that "Plaintiff is also subject to termination and will likely be terminated due to malicious, false and contrived charges" (Doc. 48, Ex. L6).[7] On February 15, 2001, Plaintiff filed this action alleging (1) race discrimination and (2) retaliation in violation of Chapter 760, Florida Statutes; Title 42, United States Code, Section 2000e *et seq.*; and Title 42, United States Code, Section 1981(a).[8] The parties completed discovery. Thereafter, Defendant filed this motion claiming (1) Plaintiff's claims are *res judicata* barred, (2) Plaintiff cannot satisfy a *prima facie* case of race discrimination or retaliation, and (3) even if Plaintiff could satisfy a *prima facie* case, Defendant has proffered legitimate non-discriminatory reasons that Plaintiff cannot establish are pretextual.[9]

### II. Motion to Strike

▮ Defendant moves to strike much of Plaintiff's affidavit on various grounds.[10] Compounding the issue is that Plaintiff attempts to use his affidavit to serve the dual purpose of complying with this Court's local rule, which mandates that

---

● 13 counts of Improper Conduct by Violation of Laws or Rules (failing to follow laws and rules to the contrary when committing the above conduct)
Plaintiff was Exonerated of one count of Neglect of Duty (failing to respond to break up a fight) (Doc. 48, Ex. P, pp. IA 64–80).

7. The addendum was signed by Plaintiff and notarized on March 10, 2000 (Doc. 48, Ex. L6).

8. Both Chapter 760, Florida Statutes and Title 42, United States Code, Section 1981(a) have the same substantive proof requirements as Title VII. *See Bass v. Bd. of County Com'rs*, 256 F.3d 1095, 1109 n. 4 (11th Cir.2001). For simplicity, hereinafter the Court will refer only to Title VII.

9. Defendant also argues that even under a mixed-motive defense, it has shown, as a mat-

ter of law, that it would have made the same decision absent any retaliatory animus, and that Plaintiff has failed to exhaust his administrative remedies. The Court need not address these arguments to resolve Defendant's motion.

10. Defendant's motion details the deficiencies with each objectionable sentence or paragraph of the affidavit, reasserting grounds when necessary. Some of the more prevalent grounds include that the affidavit (1) is not based on personal knowledge, (2) is irrelevant, (3) relies on inadmissible hearsay, (4) includes conclusory statements, (5) includes speculation, and (6) attempts to "ambush" Defendant by including individuals as comparators that were not specified in discovery.

Plaintiff file a statement of the genuine issues of material fact to be tried. *See* N.D. FLA. LOC. R. 56.1(A). Defendant requests that the Court strike the deficient portions and—due to Plaintiff's failure to properly comply with the local rule—deem Defendant's statement of undisputed facts admitted for the purpose of summary judgment. For the reasons stated below, Defendant's motion to strike plaintiff's affidavit is **GRANTED** in part and **DENIED** in part.[11]

## A. Affidavit Deficiencies

■ The Court has discretion under Rule 12(f) to grant a motion to strike any redundant, immaterial, impertinent, or scandalous matter. *See* FED. R. CIV. P. 12(f). In *Ward v. State of Fla., Dept. of Juvenile Justice,* 816 So.2d 637, 2002 WL 942240, 15 Fla. L. Weekly Fed. D233 (N.D. Fla. April 9, 2002), an order with which Plaintiff's counsel should be intimately familiar, Magistrate Judge William C. Sherrill detailed the standard for a motion to strike.[12] The Court adopts Magistrate Judge Sherrill's reasoning and addresses the challenged portions of the affidavit.

■ Many of the statements in the affidavit are properly stricken as arguments, improper opinions, conclusions, are not based on personal knowledge, or are inadmissible hearsay. Therefore, Plaintiff's motion to strike is **GRANTED** as to the challenged portions of paragraphs 2, 9, 10, 11, 12, 13, 14, and 16.[13] Further, at-

---

11. In the same motion, Defendant moves to strike the affidavit of Plaintiff's counsel on various grounds (Doc. 71). Because considering Plaintiff's counsel's affidavit does not aid the Court in resolving summary judgment, to the extent the motion requests striking Plaintiff's counsel's affidavit it is **DENIED** as moot.

 By separate motion, Defendant moves to strike Plaintiff's request for judicial notice because it contends the content of the investigative reports and testimony and the truth of the jury verdict are not the proper subjects of judicial notice. "[A] court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *United States v. Jones,* 29 F.3d 1549, 1553 (11th Cir.1994) (citations and quotations omitted). Thus, Defendant's motion is **GRANTED** to the extent Plaintiff requests judicial notice of the truth of the matters asserted in the referenced documents.

12. Specifically, Magistrate Judge Sherrill determined:

 As a general rule, inadmissible hearsay cannot be considered on a motion for summary judgment. *Macuba v. Deboer,* 193 F.3d 1316, 1322 (11th Cir.1999) (citations omitted). *Celotex [Corp. v. Catrett,* 477 U.S. 317,

106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)] is to be read "as simply allowing *otherwise admissible evidence* to be submitted in inadmissible form at the summary judgment stage, though at trial it must be submitted in admissible form." *Id.* at 1324[, 106 S.Ct. 2548] (quoting *McMillian v. Johnson,* 88 F.3d 1573, 1584 (11th Cir.1996), *aff'd on other grounds,* 520 U.S. 781, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997)) (emphasis by the court). The "inadmissible form" ... is ... the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits." To defeat summary judgment by use of hearsay evidence, the nonmoving party must *also* show that the content of the statements "will be reduced to admissible form at trial." *McMillian,* 88 F.3d at 1584. Furthermore, the evidence must be admissible as substantive evidence, not as impeachment evidence. *Id.* Finally, "Rule 56(e)'s personal knowledge requirement prevents statements in affidavits based, in part, 'upon information and belief'—instead of only knowledge—from raising genuine issues of fact sufficient to defeat summary judgment." *Pace v. Capobianco,* [283 F.3d 1275, 1278 (11th Cir.2002)]. *Ward,* 15 Fla. L. Weekly Fed. at D233.

13. Plaintiff argues that his conclusory statements are based on a plain reading of the documents referenced—without pinpoint citation—in his affidavit. Assuming Plaintiff's ar-

tachments to Plaintiff's affidavit suffer from similar deficiencies.[14]

## B. Local Rule 56.1(A) statement

Local Rule 56.1(A) provides:

Any motion for summary judgment filed pursuant to Fed.R.Civ.P. 56 ... shall be accompanied by a *separate, short and concise* statement of the *material facts* as to which the moving party contends there is no genuine issue to be tried. Failure to submit such a statement constitutes grounds for denial of the motion.

*The statement shall reference the appropriate deposition, affidavit, interrogatory, admission or other source of the relied upon material fact, by page, paragraph, number, or other detail* **sufficient to permit the court to readily locate and check the source.**

The party opposing a motion for summary judgment shall, in addition to other papers or matters permitted by the rules, file and serve *a separate, short and concise* statement of the *material facts* as to which it is contended that there exists a genuine issue to be tried, *in the format set forth above.*

*All material facts set forth in the statement required to be served by the moving party will be deemed admitted unless controverted by the statement required to be filed and served by the opposing party.*

N.D. Fla. Loc. R. 56.1(A) (emphasis added). The obligations delegated to each

---

gument to be true, his statements in his affidavit are inadmissible hearsay. *See* Fed. R. Evid. 801, 803, 804. Further, Plaintiff argues that the final sentence of paragraph 10 (that testimony was ignored and the proper standard was violated) is a "true statement and is drawn from the facts of record in this case" (Doc. 76, I.G.). Irrespective of whether Plaintiff believes it to be a "true statement," his statement is a conclusion and an opinion drawn from his examination of documents. It is *not* a statement of fact based on personal knowledge as would be admissible in evidence. *See* Fed. R. Civ. P. 56. Plaintiff's affidavit not only fails to demonstrate his competency to testify to this matter, but his argument in response to the motion to strike demonstrates that his testimony in this regard would be inadmissible hearsay. *See id.;* Fed. R. Evid. 801.

14. Exhibit J is irrelevant since Bergstrom's testimony does not demonstrate any personal knowledge of any investigation involving Plaintiff or that, even if there was "manipulation," that it extended to any investigation involving Plaintiff. Therefore, Defendant's motion is properly **GRANTED** as to exhibit J. *See* Fed. R. Evid. 401, 403.

Defendant also moves to strike Plaintiff's Exhibit A, a chart of comparators with commentary by Plaintiff, as failing to comply with Federal Rule of Evidence 1006. Such "undue editorializing" merits striking the chart. *United States v. Francis,* 131 F.3d 1452, 1458 (11th Cir.1997); *see United States v. Smyth,* 556 F.2d 1179, 1184 n. 12 (5th Cir.1977), *cert. denied,* 434 U.S. 862, 98 S.Ct. 190, 54 L.Ed.2d 135 (1977) ("It would seem ... that because summaries are elevated under Rule 1006 to the position of evidence care must be taken to omit argumentative matter in their preparation lest the jury believes that such matter is itself evidence of the assertion it makes."). However, the Court's result remains unchanged whether the exhibit is considered or not, so the Court proceeds *arguendo* as though Plaintiff's Exhibit A is proper.

Further, Defendant moves to strike Plaintiff's Exhibits A, G, and K as improper attempts to ambush it with an additional comparator, Ken Sumpter, that was not disclosed during discovery. While Defendant's argument is persuasive, as explained in note 29, *infra,* even if considered on the merits, Sumpter is not similarly situated to Plaintiff.

Additionally, Captain Nowell, referenced in paragraph 16 and Exhibit M, even if considered on the merits, is not similarly situated to Plaintiff.

party under this rule are clear and unambiguous. When filing a motion for summary judgment, the moving party, in a *separate, short and concise statement*, is required to designate which *material facts* are not in conflict. The moving party must then cite to the record evidence, *by page, paragraph, number of other detail*, that confirms this lack of dispute. Thereafter, the non-moving party is obligated to highlight which *material facts* are in conflict, and to cite to the appropriate record evidence *by page, paragraph, number, or other detail*, that confirms this dispute. *Cf. Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 921–22 (7th Cir.1994). If the non-moving party does not controvert the *material facts* set forth in the moving party's statement then they will be deemed admitted by the Court.[15]

■■■■ Local rules have the force of law. *See Weil v. Neary*, 278 U.S. 160, 169, 49 S.Ct. 144, 148, 73 L.Ed. 243 (1929); *Calmaquip Eng'g W. Hemisphere Corp. v. West Coast Carriers Ltd.*, 650 F.2d 633, 636 (5th Cir. Unit B 1981) (stating that the requirements of Southern District of Florida Local Rule 10(J)(2) are "mandatory and may not be waived").[16] Local Rule 56.1(A) was designed to facilitate the resolution of summary judgment motions by requiring each party to direct the Court's attention to the *material facts* at issue in what

otherwise might amount to a complex and voluminous record. *Cf. Jackson*, 101 F.3d at 150–51, 153 (stating that "Rule 108(h) assists the district court to maintain docket control and to decide motions for summary judgment efficiently and effectively"); *Waldridge*, 24 F.3d at 922. A fact question either exists or it does not. Even so, when a party fails to file a proper Rule 56.1(A) statement, district courts are not obligated to search for a fact question by sifting through the record. *See Jackson*, 101 F.3d at 154 & n. 7; *see also Dunlap v. Transamerica Occidental Life Ins. Co.*, 858 F.2d 629, 631–32 (11th Cir.1988).[17] If a non-moving party fails to controvert a material fact contained in a moving party's statement, that material fact will be deemed admitted for the purpose of ruling on the motion for summary judgment. While this rule may be, at times, unforgiving, and sometimes fatal, it "substantially facilitates [a] district court's task of deciding whether a trial is indeed necessary." *Waldridge*, 24 F.3d at 924.

■■■■ In the instant case, Defendant submitted a forty-six page Rule 56.1 statement of facts ("Defendant's statement") in support of its motion for summary judgment. Defendant's statement details the material facts that make up the extensive factual and procedural background of the

---

**15.** Whether or not the Court ultimately elects to deem admitted certain facts remains within the sound discretion of the Court. *See Waldridge*, 24 F.3d at 923.

**16.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981.

**17.** A number of district courts in this circuit have adopted such rules. *See, e.g.*, S.D. Fla. L.R. 7.5 (formerly Local Rule 10J); L.R.

56.1B, N.D. Ga. (formerly Local Rule 220–5(b)); L.R. 56.1, M.D. Ga. (formerly Local Rule 3.7); L.R. 56.1, S.D. Ga. (formerly Local Rule 6.6). The Eleventh Circuit has both endorsed and upheld the application of such rules. *See Brown v. Crawford County, Ga.*, 960 F.2d 1002, 1009 n. 9 (11th Cir.1992); *see also Jones v. Gerwens*, 874 F.2d 1534, 1537 & n. 3 (11th Cir.1989); *Dunlap*, 858 F.2d at 631–32; *Dixie Stevedores, Inc. v. Marinic Maritime, Ltd.*, 778 F.2d 670, 671–73 (11th Cir. 1985).

instant case. Almost every substantive sentence includes support by a pinpoint citation to depositions, exhibits, or judicially-noticeable documents.[18] Plaintiff, however, filed his affidavit, also labeling it as his "Statement of Material Facts." The "statement" is riddled with speculative and conclusory allegations that characterize the legal nature of the voluminous record that he has submitted in opposition to summary judgment. *See supra* Part II.A. For example, Plaintiff's statement states:

> 9. I have attached as Exhibit "F" my sworn testimony offered during my state trial ... showing the disparity and retaliation to which I have been subjected over at least the past 10 years within TPD. Files admitted into evidence in the 1999 state cause [*sic*] for my similarly situated co-workers who were treated more favorably than I was treated have been filed herewith under a Notice of Filing to show the level of disparity and retaliation to which I have been subjected over the past 10 years.

(Doc. 56, ¶ 9). This paragraph is almost entirely conclusory allegations.[19] Further, Plaintiff's Exhibit F alone comprises over 600 pages. Plaintiff neither provides facts for the Court to verify with this exhibit nor provides a "page, paragraph, number, or other detail sufficient to permit the court to readily locate and check the source." N.D. Fla. Loc. R. 56.1(A). Much of the

statement suffers from similar deficiencies (*See* Doc. 56, ¶¶ 2, 10, 11, 12 C & F, 13, 16).

Further, the bulk of the rare paragraphs that actually include a pinpoint citation are deficient. For example, paragraph 14 states:

> McNeil also testified during his deposition that Sgt. Sumpter, however, was demoted for not being "forthcoming" during the IA investigation; the Chief was quick to point out that Sumpter did not "lie" during the IA investigation, although the evidence in II–0027 in the form of Chief Proctor's testimony suggests otherwise. Compare pages 6–7 of Exhibit "K" with Proctor's testimony included within II–0027 in Exhibit "G".

(Doc. 56, ¶ 14). While Plaintiff attempts to establish the factual content of McNeil's testimony, in an effort seemingly aimed at establishing a disputed issue of fact, Plaintiff simply points to another article of evidence, concluding that "Chief Proctor's testimony suggests otherwise" (Doc. 56, ¶ 14). Plaintiff does not state that a disputed fact exists (merely "suggest[ing]" the existence of a disputed fact) or set forth what disputed *fact* appears in the other article of evidence. Rather, Plaintiff places an exhibit of approximately 400 pages before the Court and expects the Court to not only undertake an expedition in search of some fragment of testimony included within it, but then, upon discovery of the treasured portions of the document, to comb though Proctor's testimony with

---

18. While Defendant's statement may have been more effective by presenting numbered, one or two sentence paragraphs with individual pinpoint citations, Defendant's statement clearly complies with the dictates of Local Rule 56.1(A). *See* N.D. Fla. Loc. R. 56.1(A).

19. Plaintiff attempts to cure this deficiency by requesting that the Court substitute "treat-

ment" for "disparity and retaliation" (Doc. 76, I.D.). Assuming that the Court could rewrite the affidavit as Plaintiff requests, such a change would not transform the conclusory nature of this paragraph into a statement of fact. Perhaps more importantly, such a rewrite would not result in the statement's compliance with Local Rule 56.1(A).

the hope of stumbling upon some portion that merely "suggests" a disputed issue of fact.[20] Filing a massive record, making conclusory and opinion-laden references to expansive exhibits, and expecting the Court to scour those exhibits with the faint hope of stumbling across a disputed issue of fact is simply insufficient to comply with Local Rule 56.1(A). Therefore, Defendant's Motion to Strike Plaintiff's affidavit is **GRANTED** in part and **DENIED** in part and Defendant's Statement of Undisputed Facts is admitted of the purpose of summary judgment as set forth in Part I.

### III. MOTION FOR SUMMARY JUDGMENT

#### A. Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). "[T]he substantive law will identify which facts are material" and which are irrelevant. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. *See id.*

At summary judgment, a court's function is not to weigh the evidence to determine the truth of the matter, but to determine whether a genuine issue of fact exists

for trial. *See id.* at 249, 106 S.Ct. at 2510–11. A genuine issue exists only if sufficient evidence is presented favoring the nonmoving party for a jury to return a verdict for that party. *See id.* "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.,* 975 F.2d 1518, 1534 (11th Cir.1992) (citing *Mercantile Bank & Trust Co. v. Fidelity and Deposit Co.,* 750 F.2d 838, 841 (11th Cir.1985)).

When assessing the sufficiency of the evidence in favor of the non-moving party, the court must view all the evidence, and all factual inferences reasonably drawn from the evidence, "in the light most favorable to the non-moving party." *Hairston,* 9 F.3d at 918. The court is not obliged, however, to deny summary judgment for the moving party when the evidence favoring the non-moving party is "merely colorable or is not significantly probative ...." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2511 (citations omitted). "A mere 'scintilla' of evidence supporting the ... [nonmoving] party's position will not suffice" to demonstrate a genuine issue of material fact that precludes summary judgment. *Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir.1990)

#### B. Discussion

Defendant first challenges Plaintiff's claims as barred by *res judicata.* Second, Defendant claims that Plaintiff is unable to establish a *prima facie* case on either his

---

**20.** Further, even if a disputed issue of fact were present, it would not be material to the instant case. *See infra* note 29. The Court also notes that Exhibit G is paginated in a manner similar to "Bates stamping." Yet, Plaintiff did not include the page number of the referenced document to aid the Court in locating it. However, in an abundance of caution, the Court examined the exhibit and remains steadfast in its decision to grant summary judgment.

discrimination or his retaliation claims. Finally, Defendant argues Plaintiff cannot prove its proffered legitimate business reasons are pretextual as a matter of law on those same claims.

### 1. *Res Judicata*

Defendant argues that Plaintiff's claims are barred by *res judicata* because they constitute the same cause of action as a case previously litigated by Plaintiff.[21] Plaintiff concedes that "[w]ith respect to any other issue raised by Plaintiff other than his termination, *res judicata* appears to be proper" (Doc. 54, p. 10 n. 3). Accordingly, the Court examines whether *res judicata* bars consideration of Plaintiff's termination.

▮▮▮ The Eleventh Circuit has found:

> *Res judicata* ... precludes claims which a plaintiff actually raised or could have raised in a prior suit when (1) there is a final judgment in a prior suit on the merits; (2) the decision in the prior suit is rendered by a court of competent jurisdiction; (3) the parties in both suits are identical; and (4) both suits involve the same cause of action.

*O'Connor v. PCA Family Health Plan, Inc.*, 200 F.3d 1349, 1355 (11th Cir.2000). The only issue disputed by the parties is whether the present action and *Henry I* involve the same cause of action. Two suits involve the same cause of action if the cases arise out of the same "nucleus of operative fact." *Jang v. United Tech. Corp.*, 206 F.3d 1147, 1148 (11th Cir.2000). Further, "for *res judicata* purposes, claims that 'could have been brought' are claims in existence at the time the original complaint is filed or claims actually asserted by supplemental pleadings or otherwise in the earlier action." *Pleming v. Universal-Rundle Corp.*, 142 F.3d 1354, 1356 (11th Cir.1998). Therefore, "*res judicata* does not bar a claim that was not in existence at the time of the original action unless the facts underlying the claim were actually raised in that action." *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1299 (11th Cir. 2001).

▮▮▮ Defendant argues that Plaintiff raised his termination in *Henry I* by averring that he had suffered from "enhanced penalties" and "criminal charges ... resulting in an internal affairs/CID investigation" that were "contrived to effect his termination" and that "may result in his termination" (*Henry I*, Doc. 10, ¶¶ 12, 29, 43). However, for Plaintiff to say that Defendant's actions "may result in" or are intended "to effect" his termination is entirely different than asserting that he has been terminated; the latter only appears to be possible after the termination has

---

21. On December 2, 1999, Plaintiff filed his initial complaint in *Henry v. City of Tallahassee, Maurice Laws, individually, and Walter McNeil, individually*, 149 F.Supp.2d 1324 (N.D.Fla.2001) (*Henry I*), alleging, *inter alia*, race discrimination and retaliation (*Henry I*, Doc. 1). After a series of amendments, Plaintiff filed his Second Amended Complaint to "address ... pleading deficiencies" and "eliminate[] Plaintiff's claims under Title VII and Chapter 760, Florida Statutes"(*Henry I*, Doc. 9, ¶ 4), and served it on March 10, 2000 (*Henry I*, Doc. 10). On March 24, 2000, Plaintiff filed an addendum to his Charge of Discrimination including that "Plaintiff is also subject to termination and will likely be terminated due to malicious, false and contrived charges" (Doc. 48, Ex. L6). On December 15, 2000, the City filed a Motion for Judgment on the Pleadings (*Henry I*, Doc. 87), which United States District Judge William Stafford granted on February 14, 2001, and the clerk entered judgment the next day (*Henry I*, Docs. 138, 139). The day judgment was entered in *Henry I*, Plaintiff filed the instant case.

been effectuated. *Cf. Lundquist v. Rice Mem. Hosp.*, 238 F.3d 975, 978 (8th Cir. 2001). Plaintiff's termination occurred after his second amended complaint was filed in *Henry I*. Accordingly, *res judicata* does not bar Plaintiff's claims with regard to his termination.[22]

### 2. Race Discrimination

Title VII provides that it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race ...." 42 U.S.C. § 2000e–2(a)(1) (West 1994). In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court articulated a tripartite framework for analyzing claims brought under Title VII. The framework places the initial burden on a plaintiff to establish a *prima facie* case of discrimination.[23] *See id.* at 802, 93 S.Ct. at 1824. To establish a *prima facie* case of disparate treatment in the workplace through circumstantial evidence, a plaintiff must show that "(1) he belongs to a protected class; (2) he was subjected to adverse job action, (3) his employer treated similarly situated employees outside his classification more favorably, and (4) he was qualified to do the job." *Maniccia v.*

*Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999). Once the plaintiff presents a *prima facie* case, a presumption of discrimination arises. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993).

The intermediate burden of production then shifts to the defendant to articulate a legitimate, nondiscriminatory explanation for the adverse action. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. "To satisfy that burden of production, '[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.'" *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir.1997), *cert. denied*, 522 U.S. 1045, 118 S.Ct. 685, 139 L.Ed.2d 632 (1998) (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981)). The defendant can satisfy this burden by producing evidence "which would allow the trier of fact rationally to conclude that the employment decision ... [was not] motivated by discriminatory animus." *Id.* (quoting *Burdine*, 450 U.S. at 257, 101 S.Ct. at 1096).

If the defendant can demonstrate a legitimate, nondiscriminatory reason, the

---

22. Defendant also points to Plaintiff's amended charge of discrimination stating that Plaintiff is "subject to termination and will likely be terminated," signed the same date as Plaintiff's second amended complaint (Doc. 48, Ex. L, p. 358 & Ex. 6). While the amendment's purpose is unclear, since the amended charge *still* did not complain of termination, Plaintiff was *actually terminated* via resignation on March 27, 2000, seventeen days after the second amended complaint was filed. Plaintiff could not bring a claim based on his termination until it occurred; knowledge that it may occur is insufficient.

23. A plaintiff may establish a *prima facie* case in one of three ways: (1) with direct evidence, (2) with circumstantial evidence, or (3) with statistical evidence. *See Corbin v. Southland Int'l Trucks*, 25 F.3d 1545, 1548 (11th Cir. 1994). Direct evidence of discrimination will, without more, suffice to present a *prima facie* case. *See Carter v. City of Miami*, 870 F.2d 578, 581–82 (11th Cir.1989). In the instant case and consistent with the record, Plaintiff does not attempt to establish a *prima facie* case of employment discrimination through direct or statistical evidence (Doc. 54, p. 11).

presumption of discrimination is eliminated and the burden shifts back to the plaintiff to raise a genuine factual question that the reason offered by the defendant was not the real reason for the adverse employment action. *See id.; Corbin*, 25 F.3d at 1550 (citing *Hairston*, 9 F.3d at 920). A plaintiff may "survive summary judgment, and judgment as a matter of law, if there is sufficient evidence to demonstrate the existence of a genuine issue of fact as to the truth of each of the [defendant]'s proffered reasons for its challenged action." *Combs*, 106 F.3d at 1529.[24] However, "there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the [defendant's] explanation, no rational factfinder could conclude that the action was discriminatory." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105 (2000); *accord Chapman v. AI Transport*, 229 F.3d 1012, 1025 n. 11 (11th Cir.2000) (recognizing that the *Reeves* decision modified the *Combs* decision). Under such circumstances, a plaintiff "still may not be entitled to take his case to a jury." *Chapman*, 229 F.3d at 1025 n. 11. A defendant may still be entitled to summary judgment, and judgment as a matter of law, even if a plaintiff offers sufficient evidence demonstrating that the defendant's stated reasons are pretextual so long as the

court determines that no rational fact finder could conclude the action was discriminatory. This test is "intended . . . to function . . . as an evidentiary guide to determine the ultimate question in a racial discrimination case under Title VII: whether the [defendant] discriminated against the claimant on the basis of race." *Roberts v. Gadsden Mem. Hosp.*, 835 F.2d 793, 796–97 (11th Cir.1988).

### a. Prima facie case

Defendant argues that Plaintiff cannot establish the third element of the *prima facie* case, that other similarity situated non-black employees were more favorably treated. Plaintiff relies on an expansive list of proposed comparators that he claims are similarly situated and disciplined more leniently than he.

 "In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Jones v. Bessemer Carraway Med. Ctr.*, 137 F.3d 1306, 1311 (11th Cir.), *opinion modified by* 151 F.3d 1321 (11th Cir.1998). "The most important factors in the disciplinary context are the nature of the offenses committed and the nature of the punishments imposed." *Id.* (internal quotations and citations omitted). Further, "Title VII does not take away an

---

**24.** In *Combs*, the Eleventh Circuit stated:

The district court must, in view of all the evidence, determine whether the plaintiff has cast sufficient doubt on the defendant's nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered "legitimate reasons were not what actually motivated its conduct," . . . . The district court must evaluate whether the plaintiff has demonstrated "such weaknesses, implausibilities, incon-

sistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Id.* at 1538 (quoting *Cooper–Houston v. Southern Ry. Co.*, 37 F.3d 603, 605 (11th Cir.1994) (citation omitted) and *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1072 (3d Cir.1996) (en banc) (citation and internal quotation marks omitted)).

employer's right to interpret its rules as it chooses, and to make determinations as it sees fit under those rules." *Maniccia v. Brown,* 171 F.3d 1364, 1368–69 (11th Cir. 1999), *reh'g denied.* (quoting *Jones,* 137 F.3d at 1311); *Nix v. WLCY Radio/Rahall Comms.,* 738 F.2d 1181, 1187 (11th Cir. 1984).

Defendant argues that this circuit requires that, in order to be similarly situated, "the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." *Id.* Plaintiff points to a recent decision of the Eleventh Circuit to argue that "similarly situated" is broader than Defendant claims. *See Alexander v. Fulton County,* 207 F.3d 1303, 1333–34 (11th Cir.2000). *Alexander* has already been effectively distinguished from the present case by at least one court. *See Holston v. The Sports Auth., Inc.,* 136 F.Supp.2d 1319, 1327–28 (N.D.Ga.2000), *aff'd,* 251 F.3d 164 (11th Cir.2001). Nevertheless, whatever "similarly situated" may be, this is certainly not it.

▪ Plaintiff sets forth an expansive list of alleged comparators that he claims, in addition to the offenses for which they were charged "should have been" charged with additional offenses, often bordering on the absurd. Plaintiff then claims that these additional offenses "should have"

lead to harsher discipline for each comparator, often the individual's termination. This, Plaintiff claims, would make him similarly situated to each alleged comparator.

▪ While the Court's inquiry is limited to "whether employees *are* similarly situated for purposes of establishing a *prima facie* case," not whether Plaintiff can construct a situation in which they could conceivably be similarly situated, and Plaintiff's argument would result in a series of mini-trials on collateral issues, even assuming Plaintiff's "should have" comparisons are proper, they eviscerate his own case. *Jones,* 137 F.3d at 1311 (emphasis added). *See* FED. R. EVID. 403; *cf. Anderson v. WBMG–42,* 253 F.3d 561, 567 (11th Cir.2001). Plaintiff does not contend that the internal investigation reports were prepared differently based on whether the subject of the report was black or not, since such an argument would be futile. The record overwhelmingly establishes that the rules were applied to black officers and non-black officers alike. Indeed, Plaintiff's list of "comparators" includes six *black officers* that he argues "should have" received harsher discipline.[25] Further, *Plaintiff's own deposition testimony* establishes, on four separate occasions, that the reason for any disparate treatment is *not* Plaintiff's race (Doc. 48, Ex. L, pp. 212 ("There's no other black in the police department that's been treated the way I've been treated. Not one."), 223

---

25. Clearly, members of Plaintiff's protected class are not proper comparators to demonstrate race discrimination. *Holifield,* 115 F.3d at 1562 (employer treated similarly situated employees *outside his classification* more favorably). Thus, Kerry Bentley, Henry Bryant, Frank Gilmore, Lewis Johnson, James Little are not properly considered for Plaintiff to establish his burden.

Additionally, "different supervisors may not be comparable" because "[d]ifferent supervi-

sors may impose different standards of behavior." *Jones v. Gerwens,* 874 F.2d 1534, 1541 (11th Cir.1989); *Jones,* 137 F.3d at 1311. Upon becoming Chief McNeil instituted a series of disciplinary reforms. Thus, five individuals—Aries, Hauer, Herzog, Hoover, and Peavy—who "should have" been disciplined under prior supervisors are not properly considered.

("There's no other black in the City of Tallahassee or the history of the [TPD] that has been treated like Raymond Henry."), 296–97 ("I was disciplined more harshly than any other police officer in the [TPD]. That includes whites and blacks."), 337–38 ("I have to go back and say again for the record, there's no other black male in TPD that's been done, handled, disciplined as harshly as I've been disciplined.")).[26]

■ Additionally, the circumstances of each alleged comparator's conduct are not sufficiently similar to Plaintiff's circumstances to create an inference that Plaintiff's termination was the result of racial discrimination. First, "the quantity ... of the comparator's misconduct" is *clearly* less than that of Plaintiff. *Maniccia,* 171 F.3d at 1368. No individual, other than Plaintiff, has been charged with anywhere near the 28 policy violations (27 of which were sustained) that he has arising out of a single incident.[27] Further, Plaintiff's "multiple instances of misconduct on the same day" and his additional misconduct arising out of the same incident "may simply have been 'the straw that broke the camel's back.'" *Jones,* 137 F.3d at 1311. Second, the Court must examine "quality of the comparator's misconduct ... to prevent [the court] from ... confusing apples with oranges." *Maniccia,* 171 F.3d at 1368–69. Yet, Plaintiff's alleged comparators are of an entirely different food group.[28] No individual other than Plaintiff was even accused of, much less had substantiated, charges of repeatedly lying about material facts while under oath in IA and CID investigations *and* abusing his authority as an officer to commit a felony, much less one for personal gain.[29] Accordingly, Plaintiff cannot establish a *prima facie* case.

26. Furthermore, Plaintiff relies entirely on his speculation of events summarized in documents that are outside his personal knowledge. Plaintiff had no involvement in any of the investigations that he raises, and he does not alert the Court to testimony of those responsible for those investigations (*E.g.,* Doc. 48, Ex. L, pp. 234–35, 246, 261, 277, 278–79, 287, 313, 320, 329, 338–39, 342–43, 345, 352)

27. Even accepting Plaintiff's tenuous "should have" argument and his unsubstantiated view of the alleged comparators as true, Plaintiff points to no individual that he claims should have been *charged* with even *half* the policy violations that were *sustained* against him (Doc. 54, Ex. A).

28. Some of the more novel examples of the individuals to which Plaintiff claims to be similarly situated include Vince Cepece (while off-duty at a Halloween party accidentally set off a grenade that was part of his costume), Webster Eldridge (charged with driving under the influence), and Zealy Jones (located outside his assigned patrol zone and in communications with dispatch, called in a location that was inside his patrol zone). Plaintiff's efforts to consider any individual that remotely approaches some aspect of Plaintiff's misconduct as a similarly situated comparator are unconvincing.

29. The only individual that could colorably be argued to be comparable to Plaintiff is Kenneth Sumpter. The Court is wary to consider Sumpter due to the abusive nature in which Plaintiff failed to disclose his intention to rely on Sumpter as a comparator until including Sumpter in his response to summary judgment. *See supra* note 14.

However, even considering the merits, Sumpter is not similarly situated to Plaintiff. First, accusations against Sumpter involved the failure to disclose a personal relationship and possible sexual harassment. These accusations are entirely different from those against Plaintiff for abuse of his law enforcement authority for personal financial gain, overt efforts to deceive investigators by lies, and blatant attempts to influence a witness. Second, Defendant based Plaintiff's discharge on being untruthful in (1) the Internal Affairs investigation and (2) the criminal investigation *and* (3) for committing a crime (felony false imprisonment) (Doc. 56, ¶ 15). Even assuming that perjury would be a proper charge

#### b. Pretext

 Assuming *arguendo* that Plaintiff had established a *prima facie* case of race discrimination, Defendant successfully satisfies its burden to present legitimate, nondiscriminatory reasons for Plaintiff's termination. Defendant presented competent evidence that Plaintiff was terminated because he was untruthful in both his CID investigation and IA investigation and because of the criminal implications of Plaintiff's conduct. Plaintiff argues that these are pretextual.

In support of his argument that Defendant's reasons are pretextual, Plaintiff relies on the evidence discussed above. After reviewing the evidence, the Court finds Plaintiff has failed to demonstrate the existence of a genuine issue of fact as to the truth of Defendant's proffered reasons for its challenged action. A reasonable fact finder could not conclude that the proffered nondiscriminatory reasons were not the real reasons for Defendant's decision to terminate Plaintiff. Assuming a fact finder could conclude Defendant's reasons were pretextual, the record conclusively reveals a plethora of other nondiscriminatory reasons for Defendant's decision to terminate Plaintiff. Consequently, no rational fact finder could conclude that Defendant's actions were discriminatory.

### 3. Retaliation

 Plaintiff claims that he was retaliated against because he previously filed charges and testified against Defendant for race discrimination. Title VII provides:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because he has opposed any practice made an unlawful practice by this ... [title], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this [title] ....

42 U.S.C. § 2000e–3(a). To establish a *prima facie* case of retaliation, Plaintiff must demonstrate that (1) he engaged in protected activity; (2) Defendant was aware of that activity; (3) he suffered adverse employment action; and (4) there was a causal link between his protected activity and the adverse employment action. *See Maniccia*, 171 F.3d at 1369. Like the tripartite framework used to establishing a claim of discrimination, once a plaintiff satisfies the elements of the *prima facie* case, a presumption of retaliation is created. *See Hairston*, 9 F.3d at 919.

---

against Sumpter, he was not also accused of a criminal act (sexual harassment is a civil claim). Third, perjury does not appear to be a proper charge against Sumpter because the IA investigation report demonstrates considerable dispute over whether Sumpter knowingly made a false statement, as there was substantial ambiguity over whether Sumpter had even been asked about past relationships (Doc. 56, Ex. G, HAR 460, 703, 710). Nevertheless, Sumpter was disciplined for failing to take additional efforts to keep communication channels open (*Id.* at HAR 710). Criminal law is not as demanding. On the other hand, Plaintiff's knowingly false statement of material fact while under oath is evinced by his diametric change of position from his call to

dispatch to his testimony during the criminal and IA investigations (Doc. 48, Ex. A, pp. CRIM 166–192, 201–02; Ex. B, pp. 20–25, 28–32, 37–41). Fourth, even if Sumpter "lied once [during his interview statement], ... there is no evidence [he] lied repeatedly under oath as [Plaintiff] did." *Maniccia*, 171 F.3d at 1369. Rather, Plaintiff presents attenuated inferences and speculation in an attempt to demonstrate that Sumpter lied in an interview (which is, at minimum, uncertain) and, thus, necessarily committed perjury in the subsequent IA interview. This is insufficient to establish that Sumpter is similarly situated.

Defendant can defeat the presumption only by offering evidence of a legitimate, nonretaliatory reason for the adverse action. *See id.* After the presumption is eliminated, the burden shifts back to the plaintiff, who must then raise an issue of material fact as to whether Defendant's reason is pretextual. *See id.* at 920–21.

Defendant contests that Plaintiff can satisfy the third element of his *prima facie* case—the causal connection between Plaintiff's September 1999 charge of discrimination or testimony in a July 1999 trial and his March 2000 termination. Plaintiff presents no direct evidence of a causal connection, and relies on circumstantial evidence by attempting to show a close time-link between the events. Defendant argues that the time lapse of six to eight months between the time of termination and Plaintiff's filing of a charge of discrimination and testimony are insufficient to create an inference of retaliation.

▮ To establish the causal relation element of his *prima facie* case of retaliation, Plaintiff need only show "that the protected activity and the adverse action are not completely unrelated." *Wideman,* 141 F.3d at 1457. "In order to satisfy the 'causal link' prong of a prima facie retaliation case, a plaintiff must, at a minimum, generally establish that the defendant was actually aware of the protected expression at the time the defendant took the adverse employment action." *Raney v. Vinson Guard Serv., Inc.,* 120 F.3d 1192, 1197

(11th Cir.1997). However, the United States Supreme Court has recently determined mere temporal proximity between the defendant's knowledge of the protected activity and an adverse employment action must be "very close" to establish causation. *Clark County School District v. Breeden,* 532 U.S. 268, 273–74, 121 S.Ct. 1508, 1511, 149 L.Ed.2d 509 (2001). While holding that a 20–month disparity was insufficient, the Court cited with approval cases holding that a three to four month disparity was insufficient. *Id.* (citing *Richmond v. ONEOK, Inc.,* 120 F.3d 205, 209 (10th Cir.1997) (3–month period insufficient); *Hughes v. Derwinski,* 967 F.2d 1168, 1174–75 (7th Cir.1992) (4–month period insufficient)).

▮ Plaintiff relies on being "fired shortly" after engaging in statutorily protected conduct, which was nine months after the conclusion of his state trial and six months from when he filed a charge of discrimination. However, the time disparity falls outside the period suggested by *Clark County.* Plaintiff does not set forth any other meritorious basis for finding causation.[30]

Assuming that Plaintiff had established a *prima facie* case of retaliation, as discussed above, the Court concludes Defendant has articulated legitimate, nondiscriminatory reasons for terminating Plaintiff. The Court further concludes Plaintiff has failed to demonstrate the existence of a genuine issue of fact as to

---

**30.** Plaintiff attempts to establish causation by relying on the fact that "investigations against him began almost immediately" after "his disclosures" (Doc. 54, p. 23). Investigating for possible misconduct is not, in and of itself, a serious and material change in terms, conditions, or privileges of employment. *See Davis v. Town of Lake Park,* 245 F.3d 1232, 1239 (11th Cir.2001). However, even if it were, Plaintiff has conceded that "[w]ith respect to any other issue raised by the Plaintiff other than his termination, *res judicata* appears to be proper" (Doc. 54, p. 3 n. 3). Even if Plaintiff had not so conceded, *res judicata* would be proper as the investigations began on November 8, 1999, well before a complaint was ever filed in *Henry I. See Pleming,* 142 F.3d at 1356.

the truth of Defendant's proffered reasons for its challenged action. Assuming further that a fact finder could conclude Defendant's reasons were pretextual, no rational factfinder could conclude that the action was retaliatory. *See Reeves*, 530 U.S. at 148, 120 S.Ct. at 2109.

For the reasons stated above, the Court finds that there are no genuine issues of material fact and Defendant is entitled to judgment as a matter of law. Defendant's motion for summary judgment is **GRANT-ED**.

## IV. SUMMARY

The Court's ruling in this matter may be summarized as follows, and IT IS HEREBY ORDERED:

1. Defendant CITY OF TALLAHASSEE's second motion for leave to file reply memorandum (Doc. 81) is **DENIED**.

2. Defendant CITY OF TALLAHASSEE's motion to strike Plaintiff's affidavit and Marie Maddox's affidavit (Doc. 71) is **GRANTED** in part and **DENIED** in part as outlined in this order.

3. Defendant CITY OF TALLAHASSEE's motion to strike Plaintiff's request for judicial notice (Doc. 70) is **GRANTED** to the extent Plaintiff requests judicial notice of the truth of the matters asserted in the documents accompanying Plaintiff's request.

4. Defendant CITY OF TALLAHASSEE's motion for summary judgment (Doc. 42) is **GRANTED**.

5. Consistent with this order, the Clerk of Court is directed to enter summary judgment in favor of Defendant. Plaintiff shall take nothing by this action and goes without day.